[Criminal No. 660. Filed June 22, 1927.]

[257 Pac. 27.]

HARRY DEFFENBAUGH, Appellant, v. STATE, Respondent.

Mr. Harry J. Valentine, and Mr. Spencer B. Pugh, for Appellant.

Mr. John W. Murphy, Attorney General, Mr. Earl Anderson, and Mr. Frank J. Duffy, Assistant Attorneys General, and Mr. E. W. McFarland, County Attorney, for the State.

ROSS, C. J.—The appellant appeals from a conviction of rape, alleged to have been committed upon his daughter, Madrene Deffenbaugh, a few days after she arrived at the age of consent (18 years) by: (1) Overcoming her resistance by force and violence; and (2) in preventing resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution. He claims that errors were committed in the course of his trial of such a

damaging nature as to require the setting aside of the judgment of conviction.

The denial of his motion for an instructed verdict at the close of the State's case, the motion being upon the ground of the insufficiency of the evidence to sustain the charge, is the basis of his first assignment. It is contended hereunder that the evidence falls short of establishing that the prosecuting witness' resistance was overcome by force or violence, or that she was prevented from resisting by threats of immediate and great bodily harm, accompanied by apparent power of execution, but that on the contrary it establishes a willing consent on her part.

Under the statute, subdivisions 3 and 4, section 231 of the Penal Code, it was essential that the state establish beyond a reasonable doubt that the act charged was accomplished in one of the ways alleged in the information. The prosecuting witness admitted that she consented to acts of sexual intercourse with appellant, but says she did so because of a beating her father gave her shortly before and his threats to beat her again if she did not yield to his wishes. Her testimony was:

"He threatened to whip me with a strap, a piece of leather and rubber, the same one he used on me in March. . . . When he told me he would whip me with a strap I quit resisting."

Referring to the March incident she said:

"He whipped me at that time with a big kind of wire strap that was at least a quarter of an inch thick and two inches wide, and rubber over it. He whipped me hard enough to make the blood come, and large welts all over my back."

Again she said, explaining that when appellant would come to her bed and she would move away from him:

"He would fly into a rage and talk to me and tell me things that he would do to me and just scare me

until I just had to give up to him.'' ''He threatened to whip me all the time, and sometimes when I would fight him like that he would just stand over me and he would be so mad and grit his teeth and just shake and be white, and he would get a strap and he would stand over me and he would tell me to say certain things, and if I didn't say them he would whip me.''

In *McQuirk* v. *State,* 84 Ala. 435, 5 Am. St. Rep. 381, 4 South. 775, the law is stated as follows:

''An acquiescence obtained by duress, or fear of personal violence, will avail nothing, the law regarding such submission as no consent at all. If the mind of the woman is overpowered by a display of physical force, through threats, expressed or implied, or otherwise, or she ceases resistance through fear of great harm, the consummation of unlawful intercourse by the man would be rape. 1 Wharton's Crim. Law, § 557; 2 Bishop's Crim. Law (7th ed.), § 1125; 3 Greenl. Ev. (14th ed.), § 211.''

See, also, 22 R. C. L. 1185, § 16.

We think the kind and degree of resistance that should be exerted must depend upon the surrounding circumstances, and when the female is so overpowered by fear of personal violence that she does not resist, the element of resistance is dispensed with. As is said in *State* v. *Cowing,* 99 Minn. 123, 9 Ann. Cas. 566, 108 N. W. 851, ''resistance is necessarily relative.'' For instance, where the act is induced by fear or through coercion of one whom the female is accustomed to obey, such as a parent, or one standing *in loco parentis,* it would be unreasonable to require the same high degree of resistance as where that relation did not exist. *Hammond* v. *State,* 39 Neb. 252, 58 N. W. 92. As to whether the threats by appellant to whip his child with a wire-rubber strap of the kind described by her, and his power and determination to do so unless she gave in to him, and also his apparent ability to inflict great bodily harm with such strap, were sufficient to frighten prosecutrix

into submission, were questions for the jury, and if the jury were satisfied, as they seemed to have been, that her submission was the result of her belief that he would execute his threat, there were present all the circumstances to constitute the crime of rape as defined by subdivision 4 of section 231 of the Penal Code.

The appellant has excerpted from an instruction this language:

"You are instructed, while it is the law that the testimony of the prosecuting witness should be carefully scanned, still this does not mean that such evidence is never sufficient to convict, and if you believe the prosecuting witness, it is your duty to render a verdict of guilty,"

—and contends that it violates the rule against singling out the testimony of a particular witness, and also that it amounts to a directed verdict of guilty. The complete instruction is as follows:

"You are instructed that the charge of rape is in its nature a most heinous one, likely to create a strong prejudice against the accused. It is a charge easy to make and hard to disprove. On this account you should bear in mind the difficulty of defending against such charge, and consider carefully all the evidence and the instructions in making your verdict. You are instructed, while it is the law that the testimony of the prosecuting witness should be carefully scanned, still this does not mean that such evidence is never sufficient to convict, and if you believe the prosecuting witness, it is your duty to render a verdict of guilty."

It is obvious that the instruction had a twofold purpose: To warn the jury to scan and carefully weigh the testimony of the prosecution, and at the same time to advise them of the well-settled rule that a conviction of rape may be had upon the uncorroborated testimony of the victim alone. *Curby* v. *Territory*, 4 Ariz. 371, 42 Pac. 953; *Trimble* v.

*Territory,* 8 Ariz. 273, 71 Pac. 932; 22 R. C. L. 1222, § 56. In that view, we think the first criticism is without merit. The language assigned as erroneous has been condemned where the charge was that of an assault with intent to commit rape, because the intent with which the assault is made is always a material element of the crime charged, the court, in *People* v. *Johnson,* 106 Cal. 289, 39 Pac. 622, saying it was error ''to put a state of facts to the jury which would bar them from finding the intent to be other than that charged by the information.''

But, in *People* v. *Liggett,* 18 Cal. App. 367, 123 Pac. 225, where the charge was rape, the court approved the instruction, saying:

''In the case here the act of copulation constituted the offense and the intent with which the defendant committed the act is immaterial. The prosecuting witness testified to the act, and if the jury believed her his guilt must necessarily follow. There was therefore, no error in the instruction.''

In the Liggett case the prosecuting witness was under the age of consent, and the only issue was, did the defendant have sexual intercourse with her? If he did, he was guilty of rape.

Here the burden of proving that the prosecuting witness was prevented from resisting by threats of immediate and great bodily harm, accompanied by apparent power of execution, was, in addition to the fact of copulation, cast upon the state. The mere act of copulation was not sufficient. Whether her mind was overpowered by the display of physical force and threats testified to by her was a question to be determined by the jury in the light of all the circumstances, and not by her statement that such was the case or that she believed he would execute his threats. In determining that controlling fact in a case where the prosecuting witness is of the age of consent the jury must find, not that the prosecuting

witness believed she was in danger of great bodily
harm when she gave in, but that the facts and circum-
stances reasonably justified such belief. Whether
the prosecutrix gave in through fear, or whether it
was a consent reluctantly but willingly given, was
the decisive question. If the former, appellant was
guilty of rape; if the latter, he was not guilty of
rape, but of incest, if anything. The witness said
she "had to give up to him" because of his threats
and intimidating actions and conduct. Whether her
statement was true or not was a fact for the deter-
mination of the jury, under the circumstances exist-
ing at the time and place. Therefore, an instruction
advising the jury that if they believed her they should
convict was an invasion of the province of the triers
of the facts and erroneous.

However, the court gave other instructions which,
when considered in connection with this one and as
a whole, leave no doubt that the jury understood that
it was necessary that they be satisfied that the prose-
cutrix was prevented from resisting by threats of
immediate and great bodily harm, accompanied by
apparent power of execution, before the act of copu-
lation would constitute rape. The jury were told:

"To warrant the conviction of the defendant of
rape it should appear from the evidence: First, that
defendant . . . made an assault upon Madrene Def-
fenbaugh. . . . Second, that by such assault and by
actual force, or by putting her in fear of her life,
or great bodily harm, (he) obtained carnal knowledge
of her."

Again:

" . . . If the jury in this case believe from the
evidence that the defendant compelled Madrene Def-
fenbaugh by threats of personal violence to submit
her person to him in sexual intercourse against her
will, and that she submitted through fear of great
bodily injury or death, then the jury should find the

defendant guilty of rape, as charged in the information.''

Again:

'' . . . And you are further instructed that if such consent was shown by the evidence to have been procured or given without great force or violence or threats of great bodily harm, then the act would not be that of rape, and you should find the defendant not guilty.''

From these instructions the jury must have understood that they had no right to convict unless the evidence showed that the prosecutrix was prevented from resisting appellant through fear of immediate great bodily harm from him unless she submitted to his wishes.

In one of the court's instructions these phrases are used: "At the time the alleged offense was committed"; and "alleged acts were repeated at divers times." These expressions are criticised, it being contended that they assume that appellant had committed certain acts. We think, while the method of expression was unfortunate, it was apparent to the jury that the court was trying to avoid doing what is claimed was done. He was not assuming that the things referred to had been proved, admitted, or established, but was stating the law upon the claim of their existence. The jury could hardly have been misled.

Finally, it is claimed that the giving of this instruction was error:

"You are further instructed that evidence of improper familiarity on the part of the defendant towards and with Madrene Deffenbaugh, both before and after the time charged in the information, is received and admitted in evidence to prove the adulterous disposition of the defendant herein and as having a tendency to render it more probable that the act of sexual intercourse charged in the informa-

tion was committed on or about the date alleged, and for no other purpose,"

—the ground of such claim being that it assumes that there was evidence of improper familiarity on the part of the defendant towards the prosecutrix both before and after the time charged in the information.

The competency of such evidence is not questioned; neither is it claimed that there was no evidence in the record of improper familiarities on the part of the appellant towards the prosecutrix. The fact is there was much evidence, including admissions of appellant, upon which to base the instruction. Every instruction given must bear some relation to the evidence actually offered and admitted in the trial, and this instruction did nothing more than assume that evidence of the kind referred to therein was in the case.

Appellant's counsel earnestly, eloquently and forcefully argue in their brief that the facts, when considered as a whole, show that the story of the prosecutrix, taken in connection with all the surrounding circumstances, is both unreasonable and improbable, and that this court should disregard the verdict of the jury and order appellant's discharge.

We have painstakingly examined the testimony of the different witnesses, and, as usual, we find it conflicting and in some respects not very satisfactory or convincing. It is difficult to bring one's self to believe that such an unholy and unnatural passion by a father for his child could exist, but in our search of the cases we find that it has happened before. Appellant testifying at the trial in his own behalf denied everything, but before that and soon after his arrest he made admissions of such a damaging nature as to amount almost to a confession of his guilt. These admissions were before the jury and were doubtless what turned the scales against appellant.

Under the circumstances, we do not feel we would be justified in disturbing the verdict. The judgment is accordingly affirmed.

LOCKWOOD and McALISTER, JJ., concur.