[Criminal No. 834. Filed June 29, 1936.]

[59 Pac. (2d) 305.]

V. L. HASH, Appellant, v. STATE OF ARIZONA, Respondent.

Messrs. Cox & Moore, Mr. L. C. McNabb, Mr. C. H. Young, Mr. Frank W. Beer and Mr. O. V. Willson, for Appellant.

Mr. John L. Sullivan, Attorney General, and Mr. W. Francis Wilson, Assistant Attorney General, for the State.

ROSS, J.—The defendant, V. L. Hash, was convicted of raping Nora Edgar, a sixteen year old girl not his wife, which under the statute is a crime regardless of the girl's consent. In other words, under the law she was incapable of consenting. Section 4596, Rev. Code 1928. The information fixed the 5th day of May, 1935, as the time the act was committed.

The defendant's defenses were (1) a denial of the act and that he was not present at the time and place alleged or relied upon by the prosecution; and (2) that the charge against him was a "frame-up" by

the prosecuting witness and others to extort money from him.

The prosecution's evidence showed the defendant was guilty of six acts, the exact date of none being given but the first occurring in September, 1934, and the other five at more or less irregular intervals, the last being the one relied upon and occurring, according to the evidence, on a Saturday near the middle of the month of May, 1935; that is, on Saturday the 11th or Saturday the 18th of May, 1935. The state elected to rely upon the last act and fixed its date as on or about May 15, 1935.

Defendant has appealed from the judgment of conviction, and as reasons for his appeal he names and urges sixteen errors in his trial.

██ His first reason is the court's denial of his motion for a continuance. It appears that there were pending in the superior court of Maricopa county the present case, No. 13022, and case No. 13021 against defendant, both being for statutory rape, the complaining witness in each case being different. Some time before September 19, 1935, case No. 13021 had resulted in a mistrial. In July, 1935, both cases were set down for trial on September 19th, it being understood by defendant and the county attorney that case No. 13021 would be tried first. On the 19th of September the county attorney announceed ready for trial in case No. 13022, whereupon defendant expressed surprise, insisting that he was ready to proceed in 13021, but was not ready and could not at once proceed with 13022, and requested that he be allowed three days to prepare his case and get his witnesses.

The statute, section 5030, Revised Code of 1928, provides:

"When an action is called for trial, or at any time previous thereto, the court may, upon sufficient cause, direct the trial to be postponed to another day."

In *Sam* v. *State,* 33 Ariz. 383, 265 Pac. 609, we declared that a person charged with crime was entitled to time in which to prepare for trial and that a denial of such right would be error. The defendant, however, had plenty of time to prepare his case —some sixty days. His excuse for not having time to do so is hardly valid; it is that he expected to be busy for the next three days in the trial of 13021. If he had not theretofore prepared to try 13022, how was it possible for him to do so while engaged in the trial of 13021? It probably is true, as he states, that he was taken by surprise when the cases were switched, but not to his prejudice. The matter of granting his request for three days to prepare the case was addressed to the sound discretion of the trial judge, and, it not appearing that such discretion was abused, no error was committed. *Quayle* v. *State,* 19 Ariz. 91, 165 Pac. 331; *Shaffer* v. *Territory,* 14 Ariz. 329, 127 Pac. 746; *Territory* v. *Barth,* 2 Ariz. 319, 15 Pac. 673.

The second reason is that the court in an instruction directed the jury to eliminate threats of the prosecuting witness and others towards the defendant in arriving at its verdict. The instruction reads:

"You are instructed that evidence of any threats made by the complaining witness, or any other witness, against the defendant, V. L. Hash, has been admitted for the purpose of showing a motive of these witnesses, and as *e*ffecting their credibility. If therefore, you believe beyond a reasonable doubt from the evidence received in this action that the defendant, V. L. Hash, did during the middle part of May, 1935, in Maricopa County, Arizona, have sexual intercourse with Nora Edgar, that she was then

under the age of 18 years and not the wife of the said defendant, V. L. Hash, then I instruct you that it is immaterial whether or not such threats were made, and you should disregard all evidence of such threats.''

There was evidence on behalf of defendant showing, or tending to show, that the prosecuting witness and one Ethel Pruitt had demanded of defendant $200 with which to attend the Fair at San Diego, with the threat that if he refused them that sum they would disclose his conduct with the complaining witness and have him punished. The contention of the defendant, that the instruction took away from the jury the right to consider these threats and the motive back of them, is not correct. The instruction is awkwardly and poorly constructed, but it is essentially correct. If defendant committed the act charged, the complaining witness being under eighteen years of age, he was guilty. The fact that the girl subsequently threatened to tell on him if he did not give her money, or that she conspired with another to use his act with her to extort money from him, would make his act none the less criminal.

■■ The third reason is the refusal of the court to give the following instruction, requested by defendant, or any other instruction covering the same point:

''You are further instructed, gentlemen of the jury, that the State of Arizona has elected as the act upon which this prosecution is based, the incident testified to by the prosecuting witness as having occurred in the middle of May, 1935. The testimony of the prosecuting witness concerning acts occurring theretofore was admitted by the court for the purpose of showing the tendency, if any, of the defendant. If there is in your mind a reasonable doubt that the defendant committed the act testified to by the prosecutrix in the middle of the month of May, 1935, you are instructed to find him not guilty, no matter

whether you believe the testimony of the prosecuting witness as to the prior acts concerning which she has testified.''

Defendant says the purpose of this instruction was to advise the jury of the reason other acts than the one relied upon were allowed in evidence. As we understand the rule, it is that other acts between the defendant and the prosecuting witness are admissible for the purpose of showing, or tending to show, the lustful or lascivious disposition of the defendant, and as having a tendency to render it more probable that the act relied upon at the trial was committed as claimed. *Power* v. *State,* 43 Ariz. 329, 30 Pac. (2d) 1059; *Deffenbaugh* v. *State,* 32 Ariz. 212, 257 Pac. 27; *State* v. *Hadley,* 65 Utah 109, 234 Pac. 940. The phrase ''the tendency, if any, of the defendant'' does not explain the reason for allowing proof of other acts. It is, to say the least, a very vague and indefinite phrase. We think the instruction was properly refused because not stating the rule correctly. The last part of the instruction was fully covered by the court's instruction, wherein is used this language:

''If there is in your mind a reasonable doubt that the defendant committed the act testified to by the prosecutrix on or about the middle of the month of May, 1935, you are instructed to find him not guilty, no matter whether you believe the testimony of the prosecuting witness as to the prior acts (to) which she has testified.''

In *Strickland* v. *State,* 37 Ariz. 368, 294 Pac. 617, 620, we said:

''It is the rule, that when an instruction requested to be given is good in part and bad in part, it is not error for the court to refuse to give it, nor is it required to separate the good from the bad. *Rain* v. *State,* 15 Ariz. 125, 137 Pac. 550.''

If defendant wanted a correct instruction on this point, he should have submitted one to the court.

■■ His fourth reason is the giving of the following instruction:

"You are instructed, gentlemen of the jury, that it is not necessary for the state to prove that the crime charged and for which this defendant is now on trial, was committed upon the exact date specified in the information, that is May 5th, 1935, for the exact date alleged in the information is immaterial."

It is claimed this instruction, in effect, nullified defendant's defense of alibi.

As above stated, the prosecution had elected to rely upon the act occurring on or about May 15, 1935. Having elected that date, the court was correct in stating that the exact date alleged in the information was immaterial. The law is well settled that, where the evidence shows, or tends to show, that several acts of intercourse have occurred between defendant and prosecuting witness, it is incumbent upon the prosecution to elect which one of such acts it relies upon for a conviction. The elected act may or may not coincide with that alleged in the information. While the evidence must identify and isolate the act relied upon, we do not understand that it is any more necessary to prove the exact date such act occurred than it is to allege the precise time in the information. Section 4980, Revised Code of 1928, provides that the precise time an offense was committed need not be stated in an information or indictment, if it is alleged that it was committed prior to the filing or finding thereof, "except where the time is a material ingredient of the offense." Time is not an ingredient of the crime of rape, and it is not necessary to allege the precise time of its commission, nor is it necessary to prove the precise time.

The defendant, we think, concedes this when time is not made an issue, but contends, when the defense is an alibi, time becomes an issue and is very important to the defendant. The evident reason the legislature relieved the prosecution from alleging and proving the precise time of the commission of the crime, where time is not a material ingredient thereof, was to prevent the miscarriage of justice by reason of a variance of proof and allegation upon an immaterial issue. If by interposing an alibi as a defense a defendant can compel the prosecution to elect the precise time the act relied upon for conviction took place, the leeway the statute allows for faulty memory or inaccurracy of date of occurrence is abolished. While the identification and isolation as to time and place of the act relied upon are necessary, the precise day or date of its occurrence need not be designated. But if the election is that it occurred on or about a given date, as ''on or about the 15th day of May, 1935,'' it is sufficient under the law, and evidence supporting such election will sustain a conviction. *People* v. *Wademan,* 38 Cal. App. 116, 175 Pac. 791.

We do not understand that the court in *State* v. *Hart,* 119 Wash. 529, 205 Pac. 836, 837, cited by defendant, has laid down a different rule. In that case the question was the applicability of the instructions to the proved or admitted facts. The court there held that if the evidence show, or it is admitted, that the act relied upon occurred at a particular time and place, it is error to instruct the jury, where the defense is an alibi, ''that the exact date is immaterial,'' if the prosecution was commenced before the crime was barred by limitation. The court was announcing the universal rule: That the instruction must always have some relation to and bear upon the facts of the case.

▮ The fifth reason is the following language, taken from one of the court's instructions:

"The law does not require that the prosecuting witness be supported by any other witness or by any corroborating evidence. . . . "

The whole instruction, or the material part thereof, reads:

"You are instructed that in cases of this nature, a charge of rape is easily made and difficult to disprove. The law does not require that the prosecuting witness be supported by any other witness or by any corroborating evidence, but under such circumstances it requires that you examine the evidence with caution."

It is said by defendant that this instruction singles out the testimony of the prosecuting witness and thereby magnified it and gave it undue importance. When the act of intercourse is by mutual consent, or is unaccompanied by resistance or outcries or immediate complaint, necessarily it must be proved largely and sometimes entirely by the testimony of the woman. The rule as given is correct under such circumstances. Under the facts of this case, it should not have been given for the reason that the prosecuting witness was supported by other witnesses and corroborating evidence, and the instruction, contrary to the facts, assumed that there was no supporting or corroborating evidence. For that reason the instruction could not have prejudiced nor harmed defendant. The rule that a defendant may be convicted on the uncorroborated testimony of the prosecutrix alone has been approved by this court in a number of cases, the more recent ones, being *Zavala* v. *State,* 39 Ariz. 123, 4 Pac. (2d) 390, and *Deffenbaugh* v. *State, supra.* In *Reidhead* v. *State,* 31 Ariz. 70, 250 Pac. 366, we indicated that there are some limitations on this rule. We said:

"It is not always necessary in order to sustain a conviction of rape that the testimony of the prosecutrix should be corroborated. *Curby* v. *Territory,* 4 Ariz. 371, 42 Pac. 953; *Trimble* v. *Territory,* 8 Ariz. 273, 71 Pac. 932. But, as has often been said, following the admonition of Lord Hale:

" 'This is an accusation easy to be made and hard to be proved, and harder to be defended by the party accused, though ever so innocent.'

"And when a verdict of guilty is returned on the evidence of the prosecutrix alone, her story must be reasonable, consistent, and not inherently impossible or improbable to a degree that would make it incredible to the ordinary man."

■ The sixth reason is based upon, not the whole of an instruction reading thus: "(However, you are further instructed, that you are not at liberty to find the defendant guilty for any act committed within five years prior to the said 21st day of June, 1935, except the act upon which the State has based its prosecution in this case, if any act was committed, that is, an act claimed to have been committed by the defendant during the middle part of the month of May, 1935.) If there is in your mind a reasonable doubt that the defendant committed the act testified to by the prosecutrix on or about the middle of the month of May, 1935, you are instructed to find him not guilty, no matter whether you believe the testimony of the prosecuting witness as to the prior acts (to) which she has testified," but upon that part thereof that we have inclosed in parentheses. The instruction should be considered as a whole, and when it is it clearly states the law and protected the rights of the defendant.

■ The seventh reason is that the court erred in not striking a certain remark of the county attorney and in not instructing the jury to disregard such remark upon defendant's objection and motion. The

particular language excepted to is the italicized portion in the following excerpt from the county attorney's closing argument to the jury:

"The evidence of Nora Edgar, corroborated by Ethel Pruitt, corroborated by Mr. Van Doren of the Dublin Garage, who testified that Nora Edgar came there to his garage and called Mr. Hash up and he would come down and get his car and drive it out. Where? The front door of the garage on Jefferson facing the Court House? No. Drove out the back through the alley and down the alley, like a thief in the night, and he was a thief in the night, taking a 14 or 15 year old girl out to steal her virtue. *He is worse than a thief in the night and should be treated accordingly.* Can it be said that all a man has to do in Maricopa County after raping a girl under the age of 18 is to get him some good lawyers and frame a frame-up—"

We quote the objection and motion to strike:

"Mr. Young: If your Honor please, at this time we object to the statement of the county attorney that he (defendant) is worse than a thief in the night. We want the record to show we object to it as highly prejudicial to this jury and the jury to be instructed to disregard it."

The evidence supported this statement so far as it attempted to recite the facts. It is seen that the phrase criticized is the deduction of the speaker from the facts as related, wherein he likens one who steals or takes a young girl's virtue unto one who steals property at night. He was using a mere figure of speech to stress and emphasize the enormity of the offense as he viewed it. He was only calling to the attention of the jury in a rather rugged manner what every right-thinking person believes. The characterization of defendant's acts, as that "he is worse than a thief in the night and should be treated accordingly," we think was justified and permissible and

the court did not err in refusing to strike the remarks on defendant's motion. The defendant makes the point that there was no evidence that he was ever seen with the prosecuting witness except in broad daylight; that the reference to night-time was a statement unsupported by any evidence whatever; and that for that reason the county attorney was guilty of misconduct. The county attorney's reference was not so much to the time as to the fact of his driving from the garage through an alley or back way.

 His eighth reason is the failure of the court, of its own motion, immediately to instruct the jury to disregard the last sentence of the above quotation reading:

"Can it be said that all a man has to do in Maricopa County after raping a girl under the age of 18 is to get him some good lawyers and frame a frame-up—"

The county attorney's language was not justified by any evidence and was uncalled for. One accused of crime is entitled to defend himself and to that end to employ lawyers to represent him, and the fact that he does so should not be the subject of animadversion by the prosecution. Counsel for the state has a right to analyze the defendant's defense, point out its weaknesses, uncertainties and improbabilities, but not to accuse the defendant and his attorneys of "framing" the defense. It is a serious thing to charge that defendant's attorneys are guilty of subornation of perjury. However, the defendant did not object to the language nor move to have it stricken nor ask that the jury be instructed to ignore it. One of these steps should have been taken and a ruling had to lay the foundation for error. Without a ruling ordinarily there is nothing to appeal from.

His ninth reason is the conduct of the county attorney in his closing argument in (1) exhibiting before the jury a bundle of defendant's canceled checks payable to the father, and Ola and Erma, older sisters of the prosecuting witness, which canceled checks had been offered by the defendant but ruled out on objection of the prosecution; and (2) stating that ''there is the reason why'' (meaning the checks) the father was testifying in impeachment of his daughter, the prosecuting witness. When objection was taken to the action of the county attorney, the court remarked, ''The bundle of checks *were* not in evidence; the offer was rejected,'' but made no ruling. It is claimed the action of the county attorney was obviously for the purpose of prejudicing the jury against the father, who had testified in behalf of the defendant. Granting that the vouchers were not in evidence, and the exhibition of them to the jury was 'error, we think it was harmless. The defendant had offered the canceled checks to show his friendship for the Edgar family. He had testified that the sum represented by these checks was only a portion of the money he had given to the father, Ola and Erma, and that he had for four or more years always given them aid when asked to do so and only drew his checks when he had no money in his pockets. He explained the reason of his interest in the family was that he was engaged to be married to Ola, the engagement extending over a period of some four years and until Ola broke off the engagement and married another person. He said that he spent most of his leisure time in the Edgar home and that he had often given Nora small sums for candy, moving pictures, etc.; that many times she had come to his office and asked him for money; that he knew Mr. Edgar was without employment and was hard up and for that

reason he assisted the family with his means. This evidence was offered and admitted on the theory that the donations defendant made to the family and the different members thereof were purely for altruistic reasons. The prosecution's argument was that such aid to the father and other members of the family was for the selfish purpose of closing the father's eyes to the despoliation of the young daughter. Since the evidence of the gifts by defendant to the father and the older girls and to Nora was in at the instance of defendant, we cannot see how the reference to the canceled checks by the county attorney in his argument could have influenced the jury one way or the other. It was the fact of these gifts that concerned both defendant and the state, each assigning to the giver a different motive or purpose.

▉ The tenth and eleventh reasons are the refusal of the court to give the two following instructions:

(1) "You, the jury, are instructed that, if after considering all the evidence and instructions of the court in this case, you have in your minds only that the defendant had an opportunity to commit all the act or acts herein charged against him, then you must render a verdict of not guilty. The law does not permit in a case of this kind a verdict of guilty to stand on a mere fact that the defendant had an opportunity to commit an act or acts charged against him."

(2) "You, the jury, are instructed that, if after considering all the evidence and the instructions of the court in this case, you have in your minds merely a suspicion or a mere probability has appeared to you or a supposition that the defendant may have committed the offense here charged against him, you must render a verdict of not guilty. It is the law that no verdict of guilty can stand on mere suspicion, probabilities, or supposition, for these alone do not warrant a conviction."

These instructions should have been given. We do not see wherein they misstate the law. The idea they convey is a very commonplace one: That no person should be convicted upon suspicion or mere probability or from the fact that he may have had an opportunity to commit the crime. If, however, the same thought was covered by the court's instructions, then the refusal of these would not be error. The court instructed the jury as follows:

"A reasonable doubt is an actual doubt existing in your minds after you have gone over the entire case and given consideration to all the testimony and every part thereof. If you then feel uncertain, and are not fully convinced from the evidence that the defendant is guilty, and believe that you are acting in a reasonable manner, and that a reasonable man in any matter of like importance would hesitate to act because of such a doubt as you are then conscious of having, such doubt in your mind is a reasonable doubt, and you should give the defendant the benefit thereof. Such doubt should be substantial, and not imaginary or unfounded, and should arise from the evidence, or from a want of evidence."

This instruction properly advised the jury as to its duty, but hardly went far enough to cover the points of the requested instructions.

His twelfth reason is the misconduct of the county attorney in putting certain impeaching questions on cross-examination to J. A. Edgar, father of the prosecuting witness, and failure thereafter to follow up by putting any witness on the stand to support the impeaching questions. This witness had testified in behalf of the defendant that his daughter Nora had told him that there was not a word of truth to the story, that it was a "frame-up" and that she didn't see why the case was not thrown out. He also testified that he and the prosecuting witness were together Saturday afternoon May 11, 1935, and Satur-

day afternoon May 18, 1935, and every other Saturday afternoon during the month of May, 1935. The impeaching questions and answers were as follows:

"Q. Let me finish my question. I will ask you if you didn't come up to my office and in the presence of Ed Frazier a few days after the date on which the preliminary hearing was set, that is the time for the hearing, not when it was set, but a few days after the time it was set for preliminary hearing, you came up there and asked me to dismiss that case that involved your daughter, and I asked you why, and you said, 'I don't know whether he had intercourse with her or not, but if he did, he didn't get it into her womb and she is not going to be hurt by it.' Didn't you do that? A. No, sir. . . .

"Q. And didn't I at that time say to you, 'Mr. Edgar, do you mean to say that just because your daughter,' using your own language, ' "That he didn't get it into her womb he shouldn't be prosecuted" '? A. Absolutely not.

"Q. And didn't I say to you at that time and place in the presence of Ed Frazier that if you didn't have any respect for your own daughter you ought to have it for any other girls that might be involved in this case? A. No, sir."

After these questions were put and answered the defendant moved that they be stricken on the grounds that they were (1) of no probative value; (2) argumentative in nature; (3) not put for the purpose of impeachment but to prejudice the defendant. The court overruled the motion stating, among others, its reason therefor as follows: "It may be for use as a basis for impeachment." It can at once be seen that these questions must have been damaging to the defendant. Back of each was the personal guarantee of the county attorney that Edgar had stated to him all the things assumed in the question. In other words, it was as though the county attorney had himself sworn and testified to such facts. Not only was

his personal and official standing back of these statements, but he called in to corroborate him Ed Frazier, deputy county attorney, a lawyer of high standing for integrity and ability. These questions were not put, as the court assumed "as a basis for impeachment." Their certain effect was to discredit the witness J. A. Edgar. The county attorney, if he knows any facts, may, like any other witness, be sworn and submit himself to examination and cross-examination, but he may not obtrude upon the jury and into the case knowledge that he may possess under the guise of cross-examination, as in this case. In the case of *Britt* v. *State*, 25 Ariz. 419, 218 Pac. 981, a very similar situation was presented, and we there undertook to state the rule so that the prosecuting officers of this state should clearly understand and know that such conduct would not be tolerated in this jurisdiction.

His fourteenth and final reason was the court's refusal, upon his motion at the close of the case, to instruct the jury to return a verdict of not guilty on the ground of the unreasonable, improbable, and incredible story of the prosecuting witness and the state's witness Ethel Pruitt. Whether the testimony of these two witnesses, and the other witnesses for the prosecution, should be believed by the jury, in preference to the testimony of the defendant and his witnesses, was peculiarly for the determination of the jury. And, if the case had been tried in accordance with the rules of law as we have stated them, the jury's decision upon the weight and credibility of the testimony would be final. To give sanction to the manner in which the prosecution conducted the cross-examination of defendant's witness J. A. Edgar would establish a precedent so dangerous to fair trials and the liberties of our citizens that we

feel for that reason alone the case should be retried. And, in addition, the court committed error in some of its instructions and in its refusal to give some of the requested instructions.

For these reasons, the judgment is reversed and the cause remanded for a new trial.

LOCKWOOD, C. J., and McALISTER, J., concur.