563 P.2d 898

STATE of Arizona, Appellee,

v.

Leroy Richard COOKUS, Appellant.

No. 3410.

Supreme Court of Arizona,
En Banc.

April 25, 1977.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Jack C. Cavness, Marc C. Cavness, Richard L. Thompson, Phoenix, for appellant.

HAYS, Justice.

Leroy Cookus, the appellant, was charged and convicted of murder in the first degree and sentenced to life imprisonment without the possibility of parole until 25 years are served. From that conviction and sentence he appeals. This court has jurisdiction of the appeal pursuant to the Ariz. Const. art. 6, § 5, art. 2, § 24, and A.R.S. § 13–1711 and § 12–120.21(A)(1).

On February 23, 1975, Robert Henry was taken to a desert area on the north side of Phoenix, beaten, robbed and killed. The facts leading up to his murder came out principally through the testimony of an accomplice, William Nichols, at trial.

In the several days prior to Henry's murder, Leroy Cookus, Sally Scott and William Nichols were attempting to raise money to pay Michael Crist to drive them to Indiana and to post bail for a friend of the appellant when they arrived there. On the day of the murder, Sally Scott contacted Robert Henry, whom she had known before, in order to

obtain from him money in return for an act of prostitution. To this end she arranged to meet Henry at a nearby restaurant at noon. Nichols, Cookus and Crist, whose car was used throughout, accompanied Sally to the Hobo Joe's restaurant but separated from her before they entered. While Sally and Robert Henry talked in one booth, the other three, unnoticed by Henry, observed them from another part of the restaurant. Shortly thereafter, Sally and Henry left the restaurant, while the others remained.

Sally returned several hours later without the money but with the understanding that she would receive the money from Henry later that day. All four then left the restaurant and returned to the apartment complex where Sally, Cookus and Nichols lived. Crist, who lived elsewhere, departed.

Later in the afternoon, Cookus learned that Henry was vacillating on whether to pay Sally. He instructed Nichols to get some bullets for his .38 caliber gun, with the intent of "scaring" Henry into giving Sally the money.

In the late afternoon, Sally, Nichols and Cookus borrowed Crist's car and went to a nearby gas station where Sally was to drop off Cookus and Nichols while she rendezvoused with Henry to get the money. On the way to the gas station which was but a block from their apartment complex, Nichols told Cookus of a .22 revolver under the seat of Crist's car. Cookus took the .22 from under the seat. Sally went to a nearby Taco Bell to meet Henry.

About fifteen minutes later she returned to the station, called Henry, who apparently had not shown up, and then returned to the Taco Bell to wait for him. This happened twice again during which time the appellant was, according to the testimony of Nichols, getting edgy and upset.

When Sally finally returned for the third time to the gas station where Cookus and Nichols were waiting, Henry was in the front seat of the car. Cookus and Nichols jumped in, with Cookus sitting immediately behind Henry. Cookus then stuck his gun in Henry's side and demanded the money.

Henry showed him a $100 check but Cookus ordered him to add another zero. Henry said he did not have the funds in the bank to cover it. At that point Cookus demanded that Henry give him his wallet, which demand Henry complied with. Cookus then told Sally to drive north on Seventh Avenue.

During the drive, Nichols inadvertently addressed Cookus by his first name, "Leroy." Nichols, at trial, asserted this to be the reason Cookus would have to kill Henry, lest Henry be able to trace Cookus by way of his first name.

Sally continued driving all the way to the end of Seventh Avenue where she stopped the car. Nichols and Cookus then left the car with Henry and walked down the road a short distance while Sally remained at the car. After walking several minutes, Cookus hit Henry with the gun. Henry fell towards Nichols who pushed him down. Cookus then hit Henry on the head with a rock he picked up and he kicked him several times. After several seconds, Cookus aimed his .22 at Henry and pulled the trigger but the gun failed to fire. He tried to shoot it six times without success. He then asked Nichols to shoot him but Nichols declined. Cookus then took the .38 caliber gun from Nichols and shot Henry six times.

Henry's body was found later that night by a Phoenix patrolman. The appellant, Sally and Nichols were eventually traced to the murder by way of Michael Crist's car. Subsequently, a search of the apartment shared by Cookus and Scott revealed a check of Henry's made out to Scott for $100 and a second search of the premises yielded Henry's wallet.

Nichols and Sally, being under eighteen years of age, were referred to the juvenile court. Eventually, Nichols was granted immunity from prosecution in return for his testimony concerning the events surrounding the murder. Based principally on the testimony of Nichols, the appellant, Cookus, was found guilty of first degree murder.

The appellant has raised a number of issues on appeal. The first concerns the immunity from prosecution that Nichols

was granted in return for his testimony. The appellant contends that the court abused its discretion in granting the code-fendant, Nichols, immunity without first making an *in camera* determination of whether the public interest would be best served by a grant of immunity to Nichols in this case. Immunity was granted after the witness claimed his privilege against self-incrimination pursuant to A.R.S. § 13–1804 which reads, in part:

"If a witness in any judicial or grand jury proceeding claims the privilege against self-incrimination but is required by the court to give testimony or produce evidence, the witness shall not be prosecuted or subjected to any penalty or forfeiture for, or on account of, any transaction, matter or thing concerning which he testifies or produces evidence. . . ."

The decision of whether to grant immunity in any given case involves an exercise of discretion based on whether the public interest would be best served by exchanging immunity for testimony. *State v. Buchanan,* 110 Ariz. 285, 518 P.2d 108 (1974). Such discretion is vested not exclusively in the trial court but on the contrary is traditionally a function of the prosecution. Thus, although it is the court who ultimately makes the formal grant of immunity, it is at the prosecutor's request and is, in the first instance, a matter of prosecutorial discretion to decide when the public interest would be best served by exchanging immunity for testimony. *Cf. State v. Murphy,* 113 Ariz. 416, 555 P.2d 1110 (1976); *State v. Stevens,* 93 Ariz. 375, 381 P.2d 100 (1963).*

In the instant case, defense counsel sought to present certain evidence to the judge, in chambers, which would have tended to impeach the credibility of Nichols and which may have shown that the public interest would be better served by prosecuting Nichols instead of granting him immunity. In argument on the issue, defense counsel made what amounted to an offer of proof. The court refused to conduct a hearing. Appellant has cited no case law nor is there anything in the statute (A.R.S. § 13–1804) which requires such a hearing. We see no abuse here on the part of either the prosecutor or the court. The offer of proof raises nothing which offsets the bare fact that defendant was a 25-year-old adult and the accomplice was a juvenile which in and of itself could be a basis for granting immunity.

The appellant's next assignment of error concerns the court's refusal to give a number of cautionary instructions to the jury, each of which was specifically requested by the appellant.

The first of the appellant's refused instructions read as follows:

"The evidence of a witness under the influence of drugs at the time of an occurrence to which he testifies is unreliable and the jury should consider this in arriving at a verdict."

The appellant argues that because Nichols admitted to smoking marijuana, he was entitled to have this instruction read to the jury. Although Nichols did admit to smoking marijuana on occasion, he did not testify that he was smoking marijuana on the day of the murder, and there was no evidence presented which would indicate that he was under the influence of marijuana on that particular day. A witness' history of using drugs, by itself, is too remote to support an instruction concerning the witness' use of drugs on the specific day in question. *See State v. Corley,* 108 Ariz. 240, 495 P.2d 470 (1972). Since there was no factual basis for the requested instruction, the court's refusal to give it was proper. *State v. Caruthers,* 110 Ariz. 345, 519 P.2d 44 (1974).

The court also refused to give the appellant's instruction which warned that a witness who wilfully testifies falsely at one point is to be distrusted throughout. The appellant urges that the court's refusal to so instruct was error. Apparently in requesting this particular instruction the ap-

---

* *See also* § 13–1804, *as amended,* which took effect within weeks after the conclusion of the trial of this defendant. As amended, that section provides that a grant of immunity be made *only upon the written request of the prosecutor.*

pellant sought to temper the highly incriminating testimony of Nichols. Although we recognize that one of the prime theories of the defense was that Nichols had lied consistently to save his own neck, as evidenced by the closing argument of counsel, we can find no substantive evidence on the record, and appellant has referred us to none, that would lead us to conclude that Nichols, at any point, testified falsely. Of course, the arguments of counsel are not evidence. *State v. Gonzales,* 105 Ariz. 434, 466 P.2d 388 (1970). Absent facts in the record supporting a proposed instruction, the court's refusal to so instruct is proper. *State v. Caruthers, supra.* Since we can find no evidence demonstrating that Nichols wilfully testified falsely, the court's refusal to instruct as requested was proper.

■ The third instruction refused by the court cautioned the jury that a witness who has been granted immunity should be examined with greater care than an ordinary witness. The court did instruct the jury to take into account any interest, motive or bias the witness may have had in testifying and instructed the jury concerning the corroboration of an accomplice's testimony. In view of these instructions and in view of defense counsel's broad opportunity to bring to light the witness' motive in testifying during cross-examination, the refusal to instruct as requested was not error. *See State v. Martin,* 2 Ariz.App. 510, 410 P.2d 132 (1966).

■ The defendant requested and the court refused to give a fourth instruction to the effect that a witness who feigns forgetfulness of collateral circumstances and who would be open to contradiction if he did remember, is unworthy of belief. The appellant asserts that the court's failure to give this instruction constitutes error. Unfortunately, the appellant has failed to direct our attention to any particular portion of the transcript where Nichols, or any other witness for that matter, has "feigned forgetfulness" and he has further failed to enlighten this court as to how, if at all, Nichols would have been contradicted had he given accurate testimony instead of

"feigning forgetfulness." In short, the appellant has asserted error without assigning his reasons therefor. Fundamental error aside, general allegations without specific contentions or references to the record do not warrant consideration on appeal. *State v. Houston,* 80 Ariz. 86, 292 P.2d 1077 (1956); *United States v. Goodrich,* 493 F.2d 390 (9th Cir. 1974). As a result, we need not and do not consider this particular assignment of error on appeal.

■ The appellant next contends that his requested instructions numbers 9 and 10 were erroneously rejected by the court below. Number 9 told the jury that they could not convict on mere suspicion or probability; number 10 told the jury that where there are two possible causes of the crime, one of which the defendant is not responsible for, and the evidence presented leaves the matter a mere possibility for conjecture by the jury, then the state has failed to make out its case against the defendant. In asserting the court's refusal to give these instructions as error, the appellant relies on *Hash v. State,* 48 Ariz. 43, 59 P.2d 305 (1936). In *Hash* similar instructions were rejected by the trial court, and on appeal this was deemed error. It was stated therein, however, that if the proposed instructions were covered by the instructions actually given by the court, the refusal was not error. 48 Ariz. at 58, 59 P.2d at 311. Considering only the first of the two instructions here under scrutiny (which instruction warned the jury against convicting on suspicion alone), it is clear and we hold that the idea underlying the appellant's instruction was sufficiently transmitted to the jury by the instructions given by the court.

■ Insofar as the appellant's requested instruction No. 10 is concerned, there was no factual basis to support the tendering of this instruction to the jury. The appellant's instruction stated *inter alia:*

"Where there are two possible causes for the crime complained of, for one of which the defendant is not responsible, and *the evidence leaves the matter a mere possibility for speculation, surmise or conjec-*

*ture of the jury as to who was responsible for the crime,* then the prosecution has failed to make out a case against the defendant and he must be acquitted." (emphasis added).

The only evidence adduced at trial indicated that appellant had killed Henry. This was essentially unrebutted. There was no evidence offered to show that anyone else murdered the victim. Clearly, the evidence did not leave the matter a mere possibility for speculation, surmise or conjecture as to who did the killing. Although the jury could have disbelieved Nichols' testimony, this possibility does not require that the court instruct as urged by appellant. Absent facts supporting the proposed instruction, the court's refusal to give it was proper. *State v. Caruthers, supra.*

 The appellant next contends that the jury should have been instructed on second degree murder, a lesser included offense. The defense argues that the jury might not have accepted as true the state's evidence establishing premeditation or deliberation and that absent those elements, the jury might have found the appellant guilty of second degree murder.

In *State v. Sorensen,* 104 Ariz. 503, 455 P.2d 981 (1969), in addressing this precise issue, we said:

> "For the court to have properly instructed on second degree murder, the evidence reasonably construed, should tend to show a lack of premeditation and deliberation. *The presence of such evidence* is the determinative factor." [cite omitted]. 104 Ariz. at 507, 455 P.2d at 985.

 In the case at bar, there was no evidence presented whatsoever which tended to show a lack of premeditation or deliberation on the part of the appellant. The state's case was presented principally through testimony of Nichols and was in no way rebutted. Nonetheless, the appellant argues, in effect, that the jury was not required to believe Nichols, and that in the event they didn't, they should be able to convict of second degree murder. We an-

swered this contention in *State v. Sorensen, supra,* as follows:

> "The possibility that the jury might reject portions of the State's evidence which tends to establish premeditation and deliberation as suggested by defense counsel, does not permit an instruction of second degree murder." 104 Ariz. at 507, 455 P.2d at 985.

Therefore, the refusal to instruct as requested was correct.

 Moreover, even were the jury to sift through Nichols' testimony so as to believe that portion which pinned the killing on the appellant while disbelieving the part tending to show premeditation, the evidence was still overwhelming and unrebutted that the murder occurred while in the perpetration of a felony, to wit, robbery and/or kidnapping. Under a felony-murder theory, the existence of premeditation is unnecessary to convict of first degree murder. A.R.S. § 13–452; *State v. Ferrari,* 112 Ariz. 324, 541 P.2d 921 (1975). Since there was no evidence presented which would tend to negate the existence of these crimes, or the elements thereof, under the test of *State v. Sorensen, supra,* the court's refusal to instruct on second degree murder was indeed correct.

The appellant's final contention finds its foundation in the affidavit of Richard Thompson, one of appellant's counsel both below and on this appeal. The affidavit states that three members of the jury conferred with the affiant, his co-counsel and the deputy county attorney subsequent to the verdict and that one of those jurors told the attorneys, 1) that a certain report referred to by the county attorney at trial but excluded by the court from evidence was considered by the jury in their deliberations, and 2) that the defendant was found guilty because the state's evidence was unrebutted and because there was insufficient evidence of his innocence. The appellant urges that the jurors' misconduct and misapprehension of the law require that the appellant be given a new trial. We disagree.

This court has consistently held that a verdict may not be impeached by the affidavit of a juror who has agreed to the verdict. *State v. Acosta,* 101 Ariz. 127, 416 P.2d 560 (1966); *State v. Pollock,* 57 Ariz. 415, 114 P.2d 249 (1941). The affidavit in this case was filed not by a juror but by defense counsel who repeated in his affidavit what the juror had stated. The following language taken from *Maryland Casualty Co. v. Seattle Electric Co.,* 75 Wash. 430, 134 P. 1097 (1913), and quoted with approval by this court in the criminal case of *State v. Pearson,* 98 Ariz. 133, 136, 402 P.2d 557, 560 (1965), is dispositive of appellant's claim of error:

> "Whatever the breadth of the application of the rule as to the inadmissibility of the affidavits of jurors to establish their misconduct, it is almost universally held that affidavits of third persons as to unsworn statements of jurors tending to show either the fact of misconduct or its effect upon the verdict cannot be received for any purpose because they are of a purely hearsay character. ' . . . statements made by jurors not under oath, after the trial is over, are not competent evidence.' [citing cases]."

Since the only evidence of any juror misconduct is found in counsel's affidavit which, is manifestly hearsay and hence not competent, the appellant's contentions are not supported by the record and the issue is not properly before this court.

Judgment of conviction and sentence affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.