622 P.2d 66

The STATE of Arizona, Appellee,

v.

Robert Lee BLANKINSHIP, Appellant.

No. 2 CA–CR 2029.

Court of Appeals of Arizona,
Division 2.

Dec. 17, 1980.

508

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Jack Roberts, Asst. Attys. Gen., Phoenix, for appellee.

David P. Tiers, Tucson, for appellant.

## OPINION

RICHMOND, Judge.

Appellant challenges his conviction of second degree murder and theft of property with a value of more than $1,000. He contends (1) the trial court erred in denying his motion to suppress his confession because he was arrested without probable cause; (2) denial of his request for additional psychiatric services was an abuse of discretion; (3) refusal of a witness to testify denied him the right to cross-examine; (4) playing his taped confession twice during jury deliberation was error; (5) the conviction of theft of property with a value of more than $1,000 is not supported by sufficient evidence. We affirm the second degree murder judgment and modify the theft judgment.

## PROBABLE CAUSE TO ARREST

Appellant contends that his motion to suppress his confession should have been granted because the confession was obtained after a warrantless arrest illegally made without probable cause. We disagree.

The lawfulness of a warrantless arrest depends on whether the facts and circumstances within the knowledge of the arresting officer at the time were sufficient to warrant a man of reasonable caution to believe that a felony had been committed by the person arrested. *State v. Edwards*, 111 Ariz. 357, 529 P.2d 1174 (1974). Facts and circumstances known to the officer who arrested appellant satisfy this test.

Prior to appellant's arrest, deputy Bereiter knew that a young man named Bob, whose description including a "unique hairstyle" fit appellant's appearance, was living with Lyons, the victim, just before he was murdered. Leonard Armstrong, who also was living with the victim, had told neighbors on April 13 that "Bob" suggested it would be a good idea "to hit [Lyons] in the head, take his truck and his money and leave." Sometime between April 13 and 28 Lyons was shot, dragged into the woods, and covered with grass. No money, wallet or keys were found on the body and Lyons' truck, two guns, and a notebook were missing.

The truck was recovered in Wichita, Kansas, where Leonard Armstrong was arrested as he approached it. Armstrong made three statements to the police before appellant was arrested. In the first he swore he

knew nothing about the murder but described "Bob," with the unique hairstyle noted above, as the man who had picked him up hitchhiking to Wichita. In the second statement, he said he had lied before and had seen Bob shoot Lyons in the head. Armstrong said he had been forced to drag the body out of the cabin.

The officer learned from Jackson, a hitchhiker who was picked up by Armstrong, that the man riding with Armstrong was named Bob Blankinship. Jackson's description of Blankinship matched the description of the "Bob" at Lyons' cabin. Blankinship had told Jackson that he was part owner of the stolen truck.

In a third statement Armstrong related details about the murder only an eyewitness would know. He said appellant took money, keys, a wallet, a watch, and a little notebook from the body.

Another source told Bereiter that Armstrong pointed out "Bob" at a certain residence two weeks earlier. Bereiter made two trips to that residence. On the second visit he found appellant, who identified himself as Bob Blankinship. Appellant was then arrested.

Those facts are sufficient to establish probable cause to arrest.

Probable cause is greater than a mere suspicion. *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). Appellant contends that the information Bereiter received from Armstrong cannot be used to establish probable cause because it is not "reasonably trustworthy" as required by *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). We disagree. Many parts of Armstrong's statements were independently corroborated. In any event, at the time of the arrest Bereiter had far more than a mere suspicion as to appellant's connection with the theft of the truck even without Armstrong's information. The arrest and subsequent confession were legal.

## REQUEST FOR EXPERT SERVICES

■ Prior to trial appellant's counsel by motion requested the services of two Ohio psychiatrists pursuant to A.R.S. § 13–4013(B), in order to pursue the theory that appellant had lied when he confessed because of a mental disturbance. The motion was denied. A motion for rehearing was also denied. Appellant contends these denials deprived him of an opportunity to adequately prepare his defense and present the theory that his confession was unreliable. We do not agree.

Under § 13–4013(B) an indigent person charged with a capital offense is entitled to the appointment of such expert witnesses as are reasonably necessary to adequately present his defense. Defense counsel did not establish the qualifications of the requested experts or why they were more qualified than local experts or other witnesses. Appellant had already been examined and tested by two psychiatrists and one psychologist. Reversal of a conviction is required only when the defendant establishes by clear and convincing evidence that he was prejudiced by the denial of the appointment of the expert. *Cf., State v. Knapp*, 114 Ariz. 531, 562 P.2d 704 (1977) (refusal to expend public money for defense expert's use did not require reversal), cert. den. 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). Appellant has not clearly established such prejudice.

## REFUSAL TO TESTIFY

■ The prosecutor called Leonard Armstrong, a former co-defendant, as a witness. During direct examination Armstrong refused to answer many questions even though he had already pled guilty to solicitation of murder and was instructed that he could not invoke the privilege against self-incrimination. The court warned him of possible contempt charges, allowed him to confer with his counsel, and granted the prosecutor's request pursuant to A.R.S. § 13–4064 for an order to compel the witness to testify under a grant of immunity. Armstrong persisted in selectively refusing to answer.

■ Appellant contends that the state knew before trial that Armstrong would

refuse to testify. If that were true, calling the witness for the purpose of raising inferences in a form not subject to cross-examination would constitute prosecutorial misconduct. *See Namet v. United States*, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963). Here, however, Armstrong had cooperated fully in a pretrial deposition. Nothing in the record indicates that the prosecutor had prior knowledge of any intention not to testify at trial. Every possible effort was made to induce him to testify fully.

■ During direct examination, the prosecutor referred to a prior statement made by Armstrong. Armstrong acknowledged it as his and responded to several questions about it. Objections to three succeeding questions were sustained and, out of the jury's presence, the judge explained that in view of the witness's refusal to answer certain questions, the prosecutor should not refer to the prior statements. Thereafter, no questions referred to prior statements.

■ Such questioning may violate the Confrontation Clause of the Sixth Amendment where the witness refuses to answer, because the context may induce the jury to infer that the statement was made and is true. *See Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Any significance of the objectionable questions was dispelled, however, by the trial court's admonition to the jury to disregard them, as well as the other evidence of Armstrong's involvement with appellant in the crimes. *See Namet v. United States*, supra.

## CONFESSION TAPE RECORDING

■ Appellant contends that two playings of his taped confession during the jury's deliberations gave undue prominence to a single bit of evidence. He acknowledges the discretion afforded by 17 A.R.S. Rules of Criminal Procedure, rule 22.3, but argues that allowing the tape to be replayed was an abuse of that discretion, denying him a fair and impartial trial. We disagree. Allowing a properly admitted transcript of a tape recording to be taken into the jury room is not an abuse of discre-

tion. *State v. Kennedy*, 122 Ariz. 22, 592 P.2d 1288 (App.1979). *See* 17 A.R.S. Rules of Criminal Procedure, rule 22.2. Granting a jury's request to rehear testimony by having the testimony read in open court has been held not to be an abuse of discretion. *State v. Johnson*, 122 Ariz. 260, 594 P.2d 514 (1979). Since the jury requested the repeated playings of the taped confession, the court acted within its discretion in allowing the tape to be played in open court and in instructing the jury to review all of the instructions as an alternative to defense counsel's request for repetition of the instruction on reasonable doubt and an instruction on mere suspicion based on *Hash v. State*, 48 Ariz. 43, 59 P.2d 305 (1936).

## SUFFICIENCY OF EVIDENCE

■ Appellant contends that the verdict of guilty of theft of property with a value of more than $1,000 is infirm because the evidence was insufficient as to value and his control.

Appellant was charged with stealing a .22 caliber revolver, a .22 caliber semi-automatic pistol, and a 1973 Chevrolet four-wheel drive pick-up truck. His control was established by testimony that he and Armstrong transported the truck and firearms from Tucson to Wichita. *See* A.R.S. §§ 13–1802, 13–1801(1).

■ The criterion for value is market value of the property when stolen. *State v. Jones*, 104 Ariz. 14, 448 P.2d 70 (1968). Inquiry on review is limited to whether there was substantial evidence before the jury to support the verdict. *State v. Raffaele*, 113 Ariz. 259, 550 P.2d 1060 (1976). Testimony established that the two stolen firearms were sold for $20 each, which is sufficient to establish their value as $40. *Cf. State v. Raffaele*, supra (testimony that the owner received a bona fide offer of $2,500 for stolen property was sufficient evidence of value of more than $100).

■ There was no testimony as to the dollar value of the truck. Such testimony is not always necessary if value may be in-

ferred from other evidence and the item is not something so unique as to require expert testimony as to its value. *See State v. Gibson*, 409 S.W.2d 243 (Mo.App.1966). Two 8 × 10 photographs of the truck were admitted in evidence. Testimony that the truck was driven from Tucson to Wichita indicates it was operable. The evidence, viewed in the light most favorable to the state with reasonable inferences resolved against appellant, *State v. Hunter*, 102 Ariz. 472, 433 P.2d 22 (1967), supports a finding that the truck's value was no less than $61. Whether the items were worth more than $1,000, however, is a closer question and we cannot say the evidence was sufficient to support the verdict.

Since the evidence was adequate to find appellant guilty of theft of property with a value of more than $100, we modify the judgment to conform to the evidence. *Cf. State v. Eliason*, 25 Ariz.App. 523, 544 P.2d 1124 (1976) (judgment modified to misdemeanor theft). The sentence for theft is set aside, and the matter remanded to the trial court for sentencing for theft of property with a value of more than $100. In all other respects the judgment is affirmed.

HATHAWAY, C. J., and HOWARD, J., concur.