908 P.2d 1062

**STATE of Arizona, Appellee,**

v.

**Anthony Marshall SPEARS, Appellant.**

**No. CR–93–0139–AP.**

Supreme Court of Arizona,
En Banc.

Jan. 4, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Crane McClennen, Assistant Attorney General, Phoenix, for Appellee.

Sandra B. Freedman, Scottsdale, for Appellant.

## OPINION

CORCORAN, Justice.

Defendant Anthony Marshall Spears was convicted in Maricopa County Superior Court of theft and premeditated first degree murder. The trial court sentenced defendant to death for the murder and to 4 years' imprisonment for the theft. Defendant's convictions and death sentence are automatically appealed to this court. *See* A.R.S. § 13–4033; rules 26.15, 31.2(b), and 31.15(a)(3),

Arizona Rules of Criminal Procedure. Defendant also filed a separate notice of appeal. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. §§ 13–4031, –4033, and –4035.

## FACTS AND PROCEDURAL HISTORY

Defendant lived near San Diego, California with his girlfriend Joann. Defendant had no income, so Joann supported him. Defendant had another female acquaintance in Phoenix named Jeanette (the victim) whom he had visited several times. Jeanette referred to defendant as her boyfriend and talked about their future plans together.

The state presented evidence that, in late December 1991, Jeanette apparently began getting ready to take a trip with defendant. She had her 1984 Dodge Rampage truck serviced on December 27. Shortly thereafter, she requested an extended family leave from her employer. On January 2, 1992, defendant flew from San Diego to Phoenix, using a one-way plane ticket that Jeanette had purchased for him. Before leaving California, defendant told Joann that he was going to Phoenix to work on some airplanes for 3 or 4 days. Defendant brought a 9mm Beretta handgun with him to Phoenix.

The day that defendant arrived in Phoenix, Jeanette used her Mastercard to get a $700 cash advance, and she bought a watch and sleeping bag at Target. The next day, January 3, she got a $1000 cash advance using her Mastercard and a $500 cash advance using her Discover card. Later that day, defendant accompanied Jeanette to the bank where she had the title to her truck notarized, which made the title readily transferrable. No evidence indicates that Jeanette was alive after January 3.

On January 4, defendant wrote the following on a notepad that he kept on his gun cabinet: "To anticipate death is worse than death itself. Only a matter of time." That same day he drove back to California in Jeanette's truck and arrived at Joann's around 10:30 p.m. Defendant told Joann that he bought the truck from an older couple for $3000. Upon his arrival, he had approximately 5 guns, some of which

matched those belonging to Jeanette, two sleeping bags, and almost $1000 in cash. Defendant immediately purchased a gun cabinet upon his return. He put his 9mm Beretta in the cabinet, and it remained there until police seized it on January 25.

On January 19, a family was target shooting in a desert area near Ellsworth and Elliot Roads in Maricopa County when they discovered Jeanette's body and notified the police. Jeanette was wearing the same shirt she had on when a bank camera photographed her on January 3. The autopsy revealed that Jeanette had died from a gunshot wound to the back of her head with a medium or large caliber bullet. Based on the decomposition of her body and the weather conditions, the medical examiner opined that she could have been dead for 2 to 3 weeks by the time her body was discovered. On January 30, 11 days after Jeanette's body was found, police discovered at the scene a shiny 9mm shell casing later identified as having been fired from defendant's 9mm Beretta handgun.

While searching Jeanette's home, the police discovered that her truck was missing. They also found a *TV Guide* open to January 3 and a receipt for the plane ticket that Jeanette had purchased for defendant. After getting defendant's name from the receipt, the police traced him to the San Diego area. On January 24, the Mesa Police Department telephoned the San Diego County Sheriff's Department to advise them that Jeanette was dead, her truck had been stolen, and defendant was a possible suspect. The Mesa police later sent an "attempt to locate" facsimile to San Diego confirming the phone conversation. The San Diego County sheriff arranged for surveillance of defendant's apartment complex. The deputies took defendant into custody when he arrived home on January 25 driving Jeanette's truck. Upon his arrest, defendant claimed to have a valid title to the truck in the glove compartment, but a brief search revealed none. Mesa police officers later processed the truck, and they in fact found in the glove compartment the title that Jeanette had notarized on January 3, and on the back of that document defendant's name was written in

the space designated for the purchaser to whom the title was being reassigned. Jeanette signed the back of the title in blue ink on January 3 in the presence of the notary, and defendant's name was written in black ink and dated January 1. At the time of his arrest, defendant had not registered the truck in California.

The State of Arizona charged defendant with one count of first degree murder and one count of theft. At trial, defendant, through counsel, denied any involvement in the murder and theft. At the end of the state's case, defendant moved for a judgment of acquittal for the theft and first degree murder charges, and the trial court denied both motions. Defendant then rested without testifying or presenting any evidence. On December 9, 1992, the 12–member jury unanimously found defendant guilty of theft and premeditated first degree murder. The verdicts of guilty were signed by the jury foreperson, Janet M. Kovach. The jury was polled, and the jury collectively and each juror individually responded yes to the question put by the clerk: "Are these your true verdicts?" *See* rule 23.4, Arizona Rules of Criminal Procedure.

The trial court held an aggravation/mitigation hearing and found one aggravating factor—that defendant committed the murder in expectation of pecuniary gain. The court found that the only mitigating circumstance was defendant's lack of a prior felony record. However, the trial judge also assigned some cumulative mitigating value to the following factors: love of family, good conduct in court and while incarcerated, military service, and psychological profile. The trial judge concluded that the mitigation presented was not sufficiently substantial to call for leniency and sentenced defendant to death for the murder and 4 years' imprisonment for the theft, to be served concurrently.

## ISSUES PRESENTED

We will address the following issues raised in defendant's brief. The trial issues are:

1. Whether the trial court erred by denying defendant's motion to suppress evidence and statements based on lack of probable cause for his arrest;

2. Whether the trial court erred by denying defendant's motion to suppress physical evidence based on invalid search warrants;

3. Whether the trial court erred by denying defendant's motion to suppress his statements because they were involuntary;

4. Whether the trial court erred by admitting into evidence a shell casing alleged to be from defendant's gun;

5. Whether the trial court should have granted defendant a new trial based on the state's failure to disclose the prior felony conviction of one of the state's guilt phase witnesses;

6. Whether the trial court should have granted defendant a new trial based on juror misconduct;

7. Whether the trial court should have granted defendant a new trial based on lack of evidence of premeditation;

8. Whether the trial court should have granted defendant a new trial based on lack of evidence of the stolen property's value; and

9. Whether the trial court should have granted defendant a new trial based on insufficient evidence of the theft and murder.

The sentencing issues are:

1. Whether Arizona's death penalty statute is unconstitutional;

2. Whether the trial court erred by ordering defendant to pay restitution;

3. Whether the victim impact statements presented to the trial judge at sentencing violated defendant's constitutional rights;

4. Whether defendant committed the murder for pecuniary gain;

5. Whether the trial court failed to give adequate weight to all mitigating circumstances; and

6. Whether the trial court improperly weighed the aggravating and mitigating factors.

## DISCUSSION

### I. Trial Issues

#### 1. Probable Cause to Arrest

On January 25, 1992, the San Diego sheriff confronted defendant when he arrived home driving Jeanette's truck. The deputies informed defendant that they were investigating whether the truck was stolen. Defendant told the deputies that he owned the truck and that the title was in a folder in the glove compartment. The deputies could not find the title after a brief search, even though Mesa police officers later recovered the title from the glove compartment. The deputies would not let defendant go with them into his apartment to look for the title, and defendant refused to let the deputies go in alone. After confirming over the radio that Jeanette's truck had been listed in the criminal computer system as stolen, the deputies placed defendant under arrest and transported him to the sheriff's station.

Defendant argues that the trial court erred by denying his motions to suppress all statements and tangible evidence obtained by the deputies during his arrest. Defendant alleges that because he had valid title to the truck and was denied the chance to produce it, the deputies lacked probable cause to arrest him for auto theft.

■ We will not disturb the trial court's ruling on a motion to suppress absent a clear abuse of discretion. *State v. Apelt,* 176 Ariz. 349, 363, 861 P.2d 634, 648 (1993), *cert. denied,* — U.S. —, 115 S.Ct. 113, 130 L.Ed.2d 59 (1994). In reviewing the denial of a motion to suppress, this court looks only at the evidence presented to the trial court during the suppression hearing. *State v. Flower,* 161 Ariz. 283, 286 n. 1, 778 P.2d 1179, 1182 n. 1 (1989).

■ "The police have probable cause to arrest when reasonably trustworthy information and circumstances would lead a person of reasonable caution to believe an offense has been committed by the suspect." *State v. Moorman,* 154 Ariz. 578, 582, 744 P.2d 679, 683 (1987). We agree with the trial court that the deputies had probable cause to arrest defendant outside his home on January

25. The evidence at the suppression hearing showed that, at the time of defendant's arrest, the deputies knew the following information: (1) Jeanette was dead, and her truck was missing; (2) Jeanette had made references in her diary to running off with defendant; (3) Jeanette had purchased a ticket for defendant to fly to Phoenix to visit her around the time of her murder; (4) defendant arrived home on January 25 driving Jeanette's truck, which had been reported in the criminal computer system as stolen; and (5) after a brief search of the glove compartment, the deputies were unable to locate a valid title to the truck. The fact that the Mesa police later located an apparently valid title in the glove compartment is irrelevant to an analysis of what the deputies knew at the time of defendant's arrest. Given these facts, the trial court did not abuse its discretion by denying defendant's motion to suppress statements and evidence obtained during his arrest.

## 2. Validity of Search Warrants

After arresting defendant, the deputies obtained telephonic warrants to conduct two searches of his apartment, one on the evening of January 25 and one on January 29. Defendant argues that the search warrants were invalid and the evidence obtained from the searches should have been suppressed because the deputies neglected to inform the judge that defendant claimed to have legal title to the stolen truck. We conclude that the trial court did not abuse its discretion by admitting the evidence seized pursuant to the warrants.

■■■ Evidence seized pursuant to a warrant will be suppressed if the defendant shows by a preponderance of the evidence that the affiant made a false statement, without which there would have been insufficient evidence to support a finding of probable cause. *State v. Carter*, 145 Ariz. 101, 108, 700 P.2d 488, 495 (1985). No evidence was presented at the suppression hearing that the deputy seeking the warrants knowingly or intentionally made false statements to the judge or made statements with a reckless disregard for the truth. *See Carter*, 145 Ariz. at 108, 700 P.2d at 495. The deputies failed to find a valid title to the truck when they searched the glove compartment. Defendant's allegations that he possessed valid title did not change the fact that none could be found.

■■■ Furthermore, even if the deputy had told the judge that defendant claimed to have title, the deputies still would have had probable cause to search defendant's apartment. Probable cause to conduct a search exists when "a reasonably prudent person, based upon the facts known by the officer, would be justified in concluding that the items sought are connected with criminal activity and that they would be found at the place to be searched." *Carter*, 145 Ariz. at 110, 700 P.2d at 497. When they requested the warrant, the deputies knew that Jeanette was dead, they had linked defendant to Jeanette through her diary and a plane ticket, defendant had been driving Jeanette's truck, and the murder weapon was missing, as was an AK–47 that had belonged to Jeanette. These circumstances were sufficient, absent defendant's allegation that he possessed title, to support the finding of probable cause to search defendant's apartment.

## 3. Admissibility of Defendant's Statements

When defendant arrived at the sheriff's station around noon on January 25, he was handcuffed to a bench for about an hour. He was then placed in a holding cell until 3:55 a.m. the next morning when the Mesa police interviewed him. At the beginning of the interview, the police read defendant his *Miranda* rights for the first time. Defendant waived his right to counsel and spoke with police. Twice during the interview, defendant made a reference to getting an attorney. The interview ended after the second reference to getting an attorney when defendant unequivocally requested a lawyer.

Defendant argues that the conditions of his confinement were so intolerable that he was unable to intelligently and voluntarily waive his *Miranda* rights, and therefore his statements should have been suppressed as involuntary. Defendant alleges that he was interrogated at 3:55 a.m. after suffering prolonged isolation and spending a sleepless night in a

small, cold holding cell without any food, bedding, or access to a bathroom.

■ Although "conditions of incarceration can be so intolerable as to overcome a prisoner's free will and render a confession involuntary," the free will is not overborne "where there is evidence of nothing more than uncomfortable surroundings." *State v. Arnett*, 119 Ariz. 38, 43, 579 P.2d 542, 547 (1978). At the voluntariness hearing, police officers testified that defendant was given the opportunity to use the bathroom and could have lain down on the bench in his holding cell. Furthermore, in the course of his interview with police, defendant did not ask officers to have something to eat or to use the bathroom. We conclude that the trial court did not abuse its discretion by admitting the statements because the evidence shows that conditions of which defendant complains were merely uncomfortable and were not sufficient to overcome his free will.

■ Defendant further alleges that the police violated the requirements of *Miranda v. Arizona* by failing to read him his *Miranda* rights when he was first taken into custody and by continuing the interrogation after defendant made two requests for an attorney. *Miranda* requires the police to warn people of their rights before "questioning initiated by law enforcement officers after a person has been taken into custody...." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). In this case, the police complied with *Miranda* by reading defendant his rights before beginning their interrogation.

■ Defendant claims that he made two requests for an attorney, both of which were ignored by the police who continued the interrogation. To invoke his right to counsel during an interview, the suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, — U.S. —, —, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362 (1994); *see also State v. Eastlack*, 180 Ariz. 243, 249–50, 883 P.2d 999, 1005–06 (1994), *cert. denied*, — U.S. —, 115 S.Ct. 1978, 131 L.Ed.2d 866 (1995). Upon an unambiguous request for counsel, the police must cease further questioning until a lawyer has been made available or the suspect reinitiates the conversation. *Davis*, — U.S. at ——, 114 S.Ct. at 2354–55. If the request for counsel is not sufficiently clear, the interview may continue. *Davis*, — U.S. at —, 114 S.Ct. at 2355. In making his first reference to counsel, defendant said, "It's just her word against mine then. You want to arrest me for stealing a car, then let me call a lawyer and I'll have a lawyer appointed to me and, because this is going no where [sic]. I didn't steal her car." The police responded that they were not going to arrest defendant (although defendant was clearly in custody), and the questioning continued. This amounts only to an ambiguous request for counsel,[1] and under *Davis* the police were not required to stop questioning defendant at that point.

■ Defendant's second request for counsel was: "And if you're going to pursue this and try to pin it on me, I want a lawyer because I'm not going to say nothing else until I can talk to a lawyer." Defendant is correct that under *Davis*, this request for counsel was unambiguous so the police should have stopped the interview at this point. However, at trial the state did not introduce any part of defendant's statement made after this valid request for counsel, so no erroneous evidence was presented.

### 4. Admissibility of Shell Casing

■ Eleven days after Jeanette's body was found, the police discovered a shiny 9mm shell casing under a bush at the crime

1. This is acknowledged in Appellant's Opening Brief, p. 35:
 Admittedly, Mr. Spears' first request for an attorney did *not* constitute an unequivocal request for counsel.
 (Emphasis added.) The argument which followed was that "at the very least," the officers "need[ed] to clarify whether Mr. Spears then wished to invoke his right to counsel." This is not required by *Davis*. It should be noted that Appellant's Opening Brief was filed a month *before Davis* was filed.

scene. Defendant contends that the trial court erroneously admitted the shell casing into evidence because the state failed to establish a sufficient chain of custody. At trial, however, defendant's attorney failed to object to the admission of the shell casing and later stipulated that the "evidentiary escort [chain of custody] was maintained." Therefore, defendant has waived this issue absent a finding of fundamental error. *See State v. Gillies*, 135 Ariz. 500, 510–11, 662 P.2d 1007, 1017–18 (1983). To establish a chain of custody, the state must show continuity of possession, but it need not disprove "every remote possibility of tampering." *See State v. Hardy*, 112 Ariz. 205, 207, 540 P.2d 677, 679 (1975). Defendant offers no specific evidence to support his assertion that the shell casing may have been tampered with before police recovered it. At trial, the state introduced testimony showing that the shell casing remained intact and unaltered once the police recovered it. For these reasons, we find no fundamental error here.

### 5. State's Failure to Disclose Felony Conviction of Witness

At the presentencing hearing on March 5, 1993, defendant's counsel informed the court of his recent discovery that the state had failed to disclose that one of the state's guilt phase witnesses, Michael Smith, had prior convictions for felony embezzlement and felony misapplication by a bank employee and had served a two-year sentence in California. On March 25, defendant filed a supplemental motion for new trial alleging that Smith's undisclosed felony conviction was yet another reason for granting defendant a new trial. At a hearing on the motion, defendant said that he had also learned that Smith had another embezzlement arrest. The trial court ordered the state to provide the disclosure required by rule 15.1(a)(7), but later *denied defendant's motion for new trial* stating that the prosecutor's failure to disclose was inadvertent, and the felony conviction would have had no effect on the verdict. Defendant contends that the trial court erred by denying him a new trial because he could have used this information to show that Smith may have murdered Jeanette.

"Motions for new trial are disfavored and should be granted with great caution." *State v. Rankovich*, 159 Ariz. 116, 121, 765 P.2d 518, 523 (1988). This court will not disturb a trial court's denial of a motion for new trial absent an abuse of discretion. *Rankovich*, 159 Ariz. at 121, 765 P.2d at 523. Defendant's motion for new trial based on the state's failure to disclose was made more than three months after the jury returned its guilty verdict and was therefore untimely pursuant to rule 24.1, Arizona Rules of Criminal Procedure. Even if defendant's motion is construed as a timely motion to vacate judgment based on newly discovered evidence or a constitutional violation, defendant was still not entitled to a new trial. *See* rule 24.2(a)(2)–(3), Arizona Rules of Criminal Procedure.

The prosecution is required to disclose any material exculpatory evidence to the defense including all prior felony convictions of witnesses whom the prosecutor expects to call at trial. Rule 15.1(a)(7), Arizona Rules of Criminal Procedure. At the aggravation/mitigation hearing, the deputy county attorney, John Ditsworth, conceded that he had not run records checks on any witnesses before trial because he believed that rule 15.1 only required such checks on the defendant. *See* rule 15.1(a)(5). The state's violation of rule 15.1(a)(7) did not rise to the level of a constitutional violation such as would require a new trial because the undisclosed conviction was not material. *See State v. Borbon*, 146 Ariz. 392, 396, 706 P.2d 718, 722 (1985). Evidence is material only if there is a reasonable probability that disclosure of the evidence to the defense would have changed the outcome of the proceeding. *Borbon*, 146 Ariz. at 396, 706 P.2d at 722.

Smith was the personnel director at Jeanette's place of employment, and he testified that: (1) Jeanette was not at work on January 6, 1992; (2) he later learned that she had called to request a leave of absence for a family problem; (3) Jeanette's mother had called her place of work around mid-January looking for her daughter; and (4) Smith had called the police after a co-worker had seen a news bulletin about an unidentified body and had recognized some of Jeanette's personal

belongings. Smith's prior felony convictions could only have been used for impeachment purposes under rule 609(a), Arizona Rules of Evidence, and it is likely that other employees could have verified Smith's factual testimony. Defendant could not have used the convictions or subsequent arrest to show that Smith committed the murder because none of that evidence had an inherent tendency to connect Smith to Jeanette's death. *See State v. Fulminante,* 161 Ariz. 237, 252, 778 P.2d 602, 617 (1988), *aff'd,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) ("Before a defendant may introduce evidence that another person may have committed the crime, the defendant must show that the evidence has an inherent tendency to connect such other person with the actual commission of the crime."). Under these circumstances, we agree with the trial court that a new trial was not warranted because disclosure of Smith's prior conviction would not have changed the jury verdict.

### 6. Juror Misconduct

Defendant filed a supplemental motion for new trial, pursuant to rule 24.1(c)(3), Arizona Rules of Criminal Procedure, alleging juror misconduct based on a letter to the trial judge from the person who had been the jury foreperson, Janet M. Kovach. The trial court denied the motion and defendant's request for an evidentiary hearing. Defendant then filed a motion for reconsideration of the motion for new trial, attaching an affidavit from the jury foreperson stating that: (1) the jury had considered defendant's plea negotiations and his failure to testify as evidence of his guilt; (2) the jury had reviewed the notes of an alternate juror; (3) a juror had fallen asleep; (4) a juror thought that defense counsel's failure to object to every exhibit might indicate that he thought his client was guilty; (5) a juror said defendant could appeal if he did not like the verdict; and (6) the foreperson felt that she was coerced into finding defendant guilty. The trial court requested additional memoranda on the jury misconduct issues. After the parties submitted the memoranda, the trial court again denied defendant an evidentiary hearing or a new trial stating that the alternate juror's notes were not extraneous evidence. Defen-

dant alleges that the trial court erred by denying his motions for new trial.

The state claims that defendant's motion for new trial based on juror misconduct was untimely because it was not filed within 10 days after the jury rendered its verdict, as required by rule 24.1(b), Arizona Rules of Criminal Procedure. Although the foreperson's letter was dated the day after the jury rendered its verdicts, defendant seems not to have learned of the letter until more than a month later. Nothing in the record satisfactorily explains this delay. The trial court still reached the merits of the issue, however, by apparently interpreting defendant's motion as a timely motion to vacate judgment based upon newly discovered evidence. *See* rule 24.2(a)(2), Arizona Rules of Criminal Procedure.

■■■ On appeal, defendant raised as issues only the jury's consideration of the alternate juror's notes and defendant's failure to testify. Therefore, we review the other allegations of juror misconduct only for fundamental error. We find no fundamental error here because these various other allegations of misconduct in the jury foreperson's affidavit would require an inquiry into the subjective motives or mental processes of the jurors, which is prohibited by rule 24.1(d), Arizona Rules of Criminal Procedure.

■■■ We agree with the trial court that the vague allegation in the foreperson's affidavit that the jury discussed defendant's failure to take the stand is not a sufficient basis for granting a new trial. *See United States v. Martinez–Moncivais,* 14 F.3d 1030, 1036–37 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 72, 130 L.Ed.2d 27 (1994) (holding that juror's post-trial affidavit alleging consideration of defendant's failure to testify is inadequate basis for new trial). In addition, further inquiry into this allegation may have required an improper inquiry into the mental processes of the jurors. *See State v. Covington,* 136 Ariz. 393, 396–97, 666 P.2d 493, 496–97 (1983); *State v. Callahan,* 119 Ariz. 217, 220, 580 P.2d 355, 358 (App.1978).

We next discuss the issue of the alternate juror's notes. When a defendant alleges that jurors have considered facts not properly in evidence, "the trial court must grant a new trial if it cannot find beyond a reasonable doubt that the extrinsic evidence did not contribute to the verdict." *State v. Hansen,* 156 Ariz. 291, 295, 751 P.2d 951, 955 (1988). A preliminary issue is whether the alternate's notes constitute extrinsic evidence that was not introduced at trial. The trial court refused to hold an evidentiary hearing on this issue and instead assumed that the notes were not extraneous evidence because they were taken at trial and were based on evidence that had been properly admitted. It is not inconceivable, however, that the alternate juror could have written some extraneous material in his trial notes.

Even if we assume that the notes were extraneous evidence, defendant is not entitled to a new trial because he has failed to show actual prejudice. *See State v. Miller,* 178 Ariz. 555, 560, 875 P.2d 788, 793 (1994). In *Miller,* an alternate juror, who had already been excused, left a note on a juror's car during deliberations expressing his belief that defendant was guilty. 178 Ariz. at 557, 875 P.2d at 790. We remanded that case for an evidentiary hearing. *Miller,* 178 Ariz. at 560, 875 P.2d at 793. In this case, the jury foreperson's affidavit stated only that the "jury obtained the notes of the alternate juror and reviewed and considered them during deliberations." This affidavit does not indicate that the notes contained extraneous information that was damaging or prejudicial. Furthermore, the state submitted an affidavit from another juror stating that he did not review, nor did he see any other juror reviewing, notes from an alternate juror. *See State v. Childs,* 113 Ariz. 318, 323–24, 553 P.2d 1192, 1197–98 (1976) (discounting affidavit from one juror impeaching verdict because nothing in record indicated that jurors were guilty of misconduct). Under these circumstances, we conclude that the trial court did not abuse its discretion by denying defendant an evidentiary hearing and a new trial. *See State v. Hooper,* 145 Ariz. 538, 548, 703 P.2d 482, 492 (1985) (finding no prejudice warranting new trial where two dismissed alternate jurors met with two remaining jurors before deliberations). We caution that in the future, however, trial judges should err on the side of granting an evidentiary hearing so that they can gather as much relevant information as possible before making their rulings.

### 7. Lack of Evidence of Premeditation

Defendant moved for a new trial pursuant to rule 24.1, alleging that the verdict was contrary to law or to the weight of the evidence, in part because the state failed to offer sufficient evidence to support a finding of premeditation. The trial court denied the motion, and we will not disturb that ruling absent an abuse of discretion. *See State v. Landrigan,* 176 Ariz. 1, 4, 859 P.2d 111, 114, *cert. denied,* —— U.S. ——, 114 S.Ct. 334, 126 L.Ed.2d 279 (1993).

Using direct or circumstantial evidence, the state must prove beyond a reasonable doubt that the defendant made a decision to kill before committing the act. *State v. Kreps,* 146 Ariz. 446, 448–49, 706 P.2d 1213, 1215–16 (1985). "The necessary premeditation, however, may be as instantaneous as successive thoughts of the mind. . . ." *Kreps,* 146 Ariz. at 449, 706 P.2d at 1216. In determining whether there was sufficient evidence of premeditation, this court will not reweigh the evidence and will view it in the light most favorable to sustaining the conviction. *Kreps,* 146 Ariz. at 449, 706 P.2d at 1216. In this case, the evidence showed that: (1) defendant had Jeanette purchase a one-way plane ticket so that he could fly to Phoenix; (2) he left for Phoenix with a 9mm Beretta gun in his possession; (3) he told his California girlfriend that he was coming to Phoenix to work on some airplanes, but no evidence showed that he did any work while in Arizona; (4) Jeanette requested a leave of absence from work; (5) after defendant arrived in Phoenix, Jeanette got cash advances on her credit cards and prepared to sign her truck title over to defendant; and (6) Jeanette was shot in the back of the head, which is inconsistent with a heat-of-passion murder. Based on this evidence, a rational trier of fact could have believed that defendant deliberately planned

to kill Jeanette before he committed the murder. Therefore, the trial court did not err in finding that the state had sufficiently proven premeditation.

### 8. Lack of Evidence of Valuation

On Count II, the jury found defendant guilty of theft of property worth more than $750 and less than $1500. Defendant moved for a new trial pursuant to rule 24.1 because the state failed to offer substantial evidence to support the theft conviction. Defendant now contends that his theft conviction should be reduced to a class one misdemeanor because the state failed to prove the value of the 1984 Dodge Rampage truck that he allegedly stole from Jeanette.

■■■■■■ Although defendant possessed the truck at the time of his arrest, he had taken it from Jeanette, and therefore he was not qualified as the owner of the truck to give an opinion as to its value. *See State v. Rushing*, 156 Ariz. 1, 4, 749 P.2d 910, 913 (1988) ("the owner of property is competent to give an opinion of its value"). However, specific testimony of value is not always necessary if value may be inferred from other evidence, and the item is not so unique as to require expert valuation testimony. *State v. Blankinship*, 127 Ariz. 507, 511–12, 622 P.2d 66, 70–71 (App.1980). The state offered the following evidence of valuation: (1) defendant told his California girlfriend and police officers that he paid $3000 for the truck, and (2) Jeanette's friend testified that the truck was in good condition. Furthermore, we know that the truck was operable because defendant drove it until the time of his arrest. This evidence makes this case distinguishable from *State v. Grannis*, 183 Ariz. 52, 900 P.2d 1 (1995), in which we held that the fact that the victim withdrew $200 on the night of the murder and that his wallet was never found were insufficient to prove theft of property worth $1500 or more. 183 Ariz. at 57 n. 1, 900 P.2d at 6 n. 1. Because the truck in this case was not unique, we find that the state offered sufficient evidence at trial from which the jury could infer that the truck was worth between $750 and $1500.

### 9. Insufficient Evidence

Defendant moved for a judgment of acquittal at the close of the state's case, pursuant to rule 20, Arizona Rules of Criminal Procedure, based on the insufficiency of the evidence supporting the first degree murder and theft charges. Defendant later moved for a new trial under rule 24.1, asserting that no substantial evidence warranted the convictions. Defendant argues that the trial court erred by denying both motions. We disagree.

■■■■■ A judgment of acquittal pursuant to rule 20, Arizona Rules of Criminal Procedure, is appropriate only when no substantial evidence warrants a conviction. *Landrigan*, 176 Ariz. at 4, 859 P.2d at 114. Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt. *Landrigan*, 176 Ariz. at 4, 859 P.2d at 114. A new trial under rule 24 is required only if "the evidence was insufficient to support a finding beyond a reasonable doubt that the defendant committed the crime." *Landrigan*, 176 Ariz. at 4, 859 P.2d at 114. In determining the sufficiency of the evidence, we view the evidence in the light most favorable to sustaining the verdict, and we resolve all inferences against defendant. *State v. Gallegos*, 178 Ariz. 1, 9, 870 P.2d 1097, 1105, *cert. denied*, —— U.S. ——, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994).

■■■■ Although circumstantial, the evidence here is sufficient to uphold defendant's murder and theft convictions. The evidence showed that defendant flew to Phoenix carrying a 9mm gun with him. Jeanette obtained significant cash advances while defendant was in Phoenix. Defendant accompanied Jeanette when she had the title to her truck notarized. When defendant arrived home in California driving Jeanette's truck, he had a sleeping bag and guns resembling those owned by Jeanette, and he had $1000 in cash that he did not have when he left home. Jeanette was found dead from a gunshot wound to the back of the head and could have been killed as early as January 3. A shiny shell casing consistent with Jeanette's wound was found at the crime scene and was identified as having been shot from defen-

dant's gun. We find that the above constitutes substantial evidence to warrant a conviction for murder and theft. Therefore, the trial judge properly denied the motion for acquittal. Furthermore, we believe that there was enough evidence from which jurors could find beyond a reasonable doubt that defendant committed the murder and theft, so the trial court also did not abuse its discretion by denying the motion for new trial.

## II. *Sentencing Issues*

### 1. Constitutionality of Arizona's Death Penalty Statute

Defendant argues that Arizona's death penalty scheme, A.R.S. § 13–703, is unconstitutional for various reasons. These arguments do not warrant extended discussion because defendant's claims have already been resolved by previous opinions of this court, and defendant makes no arguments that persuade us to reconsider those earlier opinions.

#### a. Consideration of Mitigating Evidence

This court has rejected defendant's argument that Arizona's death penalty statute precludes the sentencer from considering all relevant, mitigating evidence. *See State v. Brewer*, 170 Ariz. 486, 497–98, 826 P.2d 783, 794–95, *cert. denied*, 506 U.S. 872, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992).

#### b. Presumption that Death Penalty is Appropriate

This court has rejected defendant's argument that once the state proves one or more aggravating factors, death is presumed to be the proper sentence. *See State v. Greenway*, 170 Ariz. 155, 160, 823 P.2d 22, 27 (1991).

#### c. Proof of Mitigating Factors

This court has rejected defendant's argument that Arizona's death penalty statute impermissibly shifts the burden of proving mitigating circumstances to defendants. *See State v. Fulminante*, 161 Ariz. 237, 258, 778 P.2d 602, 623 (1988), *aff'd* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

#### d. Lack of Guidelines for Sentencers

This court has rejected defendant's argument that Arizona's death penalty statute is unconstitutional because it fails to channel sentencing discretion by providing standards for balancing mitigating and aggravating factors. *See Fulminante*, 161 Ariz. at 258, 778 P.2d at 623.

#### e. Right to Voir Dire Judges

This court has rejected defendant's argument that he has a right to voir dire the sentencing judge. *See State v. West*, 176 Ariz. 432, 453, 862 P.2d 192, 213 (1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1635, 128 L.Ed.2d 358 (1994).

#### f. Prosecutorial Discretion

This court has rejected defendant's argument that allowing prosecutors the discretion to seek the death penalty is unconstitutional. *See West*, 176 Ariz. at 454, 862 P.2d at 214.

#### g. Death by Lethal Gas

Defendant acknowledges that he may now choose execution by lethal gas or injection, yet he argues that the lethal gas method of execution is nonetheless unconstitutional because it constitutes cruel and unusual punishment. This argument has no merit. *See Greenway*, 170 Ariz. at 160, 823 P.2d at 27.

#### h. Jury at Capital Sentencing

This court has rejected defendant's argument that he is entitled to a jury trial on the sentencing phase of his capital case. *See Landrigan*, 176 Ariz. at 6, 859 P.2d at 116.

### 2. Restitution

Jeanette's family prepared for the court an itemized list of expenses incurred during their emergency trip to Arizona upon Jeanette's death. The expenses totalled $7865.26 and included phone, hotel, food, and gas charges, funeral expenses, probate attorney's fees, tax preparation fees, and a payment to Michael Smith for funeral-related costs. The trial court ordered defendant to pay $7015.33 without holding a restitution

hearing or itemizing the restitution award. Defendant argues that the restitution order is improper because without a hearing or an itemization, it is impossible to know whether the court distinguished between economic losses and consequential damages. At the sentencing hearing, however, defendant objected only to the probate and tax costs and the payment to Michael Smith, all of which total $800. Therefore, defendant has waived all but fundamental error with regard to the other expenses. *State v. Baltzell*, 175 Ariz. 437, 439, 857 P.2d 1291, 1293 (App.1992). We find no error in the restitution award, let alone fundamental error.

■ Under A.R.S. § 13–603(C), a convicted person must make restitution to the victim's family for the full amount of the economic loss suffered. Economic loss is defined as any loss that would not have been incurred but for the offense, and it does not include consequential damages. A.R.S. § 13–105(11). We believe that the family's funeral and travel expenses, and the "customary and reasonable attorney's fees incurred to close the victim's estate" are proper restitutionary items. *Baltzell*, 175 Ariz. at 438–39, 857 P.2d at 1292–93. No evidence in the record indicates that the legal and tax fees incurred in this case were unreasonable or contrary to custom. Therefore, we find that the trial court's restitution order was proper.

### 3. Victim Impact Statements

■ The victim's parents attached a letter to the presentence report requesting that defendant receive "the maximum sentence allowable by the State of Arizona." Defendant argues that these statements violated the United States Constitution and the Arizona Constitution. While we acknowledge that family testimony regarding the appropriate sentence may violate the United States Constitution if presented to a capital sentencing jury, we also note that victim impact testimony is not relevant to any of our statutory aggravating factors. *State v. Bolton*, 182 Ariz. 290, 315–16, 896 P.2d 830, 855–56 (1995). When victim impact evidence is offered, we have generally assumed that the sentencing judge is capable of focusing on the relevant factors and setting aside the irrelevant, inflammatory, and emotional factors, absent evidence to the contrary. *Bolton*, 182 Ariz. at 316, 896 P.2d at 856. Because defendant offers no evidence from the record to rebut this assumption, we find no reversible error here.

### 4. Pecuniary Gain

The only aggravating circumstance found by the trial court was that defendant committed the murder in expectation of the receipt of something of pecuniary value. *See* A.R.S. § 13–703(F)(5). Defendant argues that the evidence does not support a finding that he murdered Jeanette in expectation of pecuniary gain because the state failed to show that he formed the intent to steal Jeanette's money and truck before committing the murder.

■ The state must prove aggravating factors beyond a reasonable doubt. *State v. Rockwell*, 161 Ariz. 5, 14, 775 P.2d 1069, 1078 (1989). The trial court may not find pecuniary gain in every case in which "a person has been killed and at the same time defendant has made a financial gain." *State v. Correll*, 148 Ariz. 468, 479, 715 P.2d 721, 732 (1986). The (F)(5) aggravating factor applies only when pecuniary gain is a motive, cause, or impetus for the murder and not merely the result of the murder. *State v. Spencer*, 176 Ariz. 36, 43, 859 P.2d 146, 153 (1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 705, 126 L.Ed.2d 671 (1994).

■ We believe that the record supports the trial judge's finding of pecuniary gain. Defendant had no money and no source of income. Jeanette considered defendant to be her boyfriend and purchased a ticket for him to fly to Phoenix. Defendant was in Phoenix when Jeanette withdrew large amounts of cash. Defendant accompanied Jeanette while she had the title to her truck notarized so that she could transfer it to him, and then he killed her in the desert. This case is similar to *State v. Spencer*, in which we affirmed a finding of pecuniary gain because the defendant forced the victim to withdraw the funds from her bank account and then killed her and sold her car. 176 Ariz. at 43, 859 P.2d at 153. Although there is no evi-

dence that defendant physically forced Jeanette to collect her assets and transfer the title to her truck, the evidence suggests that defendant lured Jeanette into doing these things under the guise that they would be going away together. Because ample evidence shows that defendant murdered Jeanette as part of a preconceived plan to obtain her truck and her money, we conclude that the trial court properly found the aggravating factor of pecuniary gain.

### 5. Mitigating Circumstances

In addition to the statutory mitigating factors listed in A.R.S. § 13–703(G), the sentencing judge must consider "any aspect of the defendant's character or record and any circumstance of the offense relevant to determining whether a sentence less than death might be appropriate." *State v. McCall*, 139 Ariz. 147, 162, 677 P.2d 920, 935 (1983). The defendant has the burden of establishing the existence of mitigating factors by a preponderance of the evidence, and the trial court has the discretion to decide how much weight to give each mitigating factor offered by defendant. *West*, 176 Ariz. at 449, 862 P.2d at 209. In this case, defendant took the witness stand at the aggravation/mitigation hearing and made an unsworn statement.

Age was the only statutory mitigating factor raised by defendant at trial. Defendant also raised the following nonstatutory mitigating circumstances: lack of a prior criminal record, difficult family background, love of family, concern for parents, that he was a good family man, his military service, employment history, good conduct at trial and while incarcerated, low risk of future criminal conduct, adoption of new goals, remorse, *residual doubt*, and *the cumulative effect of all the above mitigating evidence*. The trial court found no statutory mitigating circumstances and found the only nonstatutory mitigating circumstance to be lack of a prior felony record, but it also gave some cumulative mitigating weight to the following: defendant's mother's love for him, his demeanor and conduct in court and while incarcerated, his military service, and his psychological profile. On appeal, defen-

dant argues that the trial court erred by failing to give sufficient mitigating weight to most of the mitigating factors that he raised. As part of our independent review, we will address each mitigating factor alleged by defendant.

#### a. Age

Defendant was 33 years old at the time of the murder, which is not a young age. *See State v. Atwood*, 171 Ariz. 576, 652, 832 P.2d 593, 669 (1992) (finding that 28 is not a young age), *cert. denied*, 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993). However, "[w]hen addressing the issue of young age, we look at the defendant's level of maturity, judgment, past experience, and involvement in the crime." *Bolton*, 182 Ariz. at 314, 896 P.2d at 854. Although defendant had no significant prior criminal record during these 33 years, he planned and committed Jeanette's murder on his own over a period of time. *See Bolton*, 182 Ariz. at 314, 896 P.2d at 854. Because this deliberateness contradicts any claim of immature impulsiveness, the trial court properly found that age was not a mitigating circumstance.

#### b. Lack of Prior Criminal History

Defendant has one misdemeanor conviction for possession of a prohibited weapon, no felony convictions, and an unresolved arrest for shoplifting. Therefore, we agree with the trial judge's finding that defendant's lack of a significant prior criminal history was a mitigating factor. *See State v. Scott*, 177 Ariz. 131, 144–45, 865 P.2d 792, 805–06 (1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 129, 130 L.Ed.2d 73 (1994).

#### c. Remorse

Although remorse may be a mitigating circumstance, we agree with the trial court that defendant failed to prove remorse by a preponderance of the evidence. *See State v. Stokley*, 182 Ariz. 505, 525, 898 P.2d 454, 474 (1995).

#### d. Difficult Family Background

A difficult family background is not necessarily a mitigating circumstance unless defendant can show that something in

his background had an effect on his behavior that was beyond his control. *See Stokley*, 182 Ariz. at 524, 898 P.2d at 473. A clinical psychologist testified that defendant suffered a physically and emotionally abusive childhood. His father drank considerably, was a strict disciplinarian, and beat defendant frequently. The psychologist diagnosed defendant with post-traumatic stress disorder that could be retriggered at any time, causing impulsive, irrational behavior. Even if this *diagnosis is correct, it does not explain why* defendant murdered Jeanette. Defendant's actions were planned and deliberate, not impulsive. *See Bolton*, 182 Ariz. at 314, 896 P.2d at 854. Therefore, the trial court appropriately gave defendant's background minimal mitigating weight.

### e. Love of Family, Concern for Parents, Good Family Man

 Love for and of family may be a mitigating circumstance. *See State v. Carriger*, 143 Ariz. 142, 162, 692 P.2d 991, 1011 (1984). However, testimony showed that defendant joined the military to get away from his father. Defendant maintained that he and his mother have always been close, yet defendant would go for months without contacting her. Furthermore, he admitted to having differences with one of his brothers and a sister, and he has not seen his daughter for 10 years. Defendant is twice divorced. In light of the evidence presented, we believe that defendant failed to prove that he is a good family man or that he is concerned for his parents. *See Atwood*, 171 Ariz. at 654, 832 P.2d at 671. Although defendant may have proven that his mother loves him, we conclude that in this case the support of third parties does not translate into a mitigating circumstance for defendant. This evidence is not relevant to whether defendant should receive the death penalty.

### f. Employment and Military History

 Although testimony showed that defendant was a reliable and hard worker, he has been unable to hold down a job for any significant amount of time, and he was frequently unemployed. Therefore, defendant has failed to prove that his employment his-

tory is entitled to mitigating weight. Defendant also served two 4–year enlistments in the military and received an honorable discharge. The trial court gave defendant's military service "some" mitigating value. We believe that defendant's military history is a mitigating circumstance, but conclude that it is not sufficient to call for leniency. *See State v. Lavers*, 168 Ariz. 376, 396, 814 P.2d 333, 353, *cert. denied*, 502 U.S. 926, 112 S.Ct. 343, 116 L.Ed.2d 282 (1991).

### g. Good Conduct in Court and While Incarcerated, and Risk of Future Criminal Conduct

 Good conduct in the presence of the judge or jury is not necessarily a mitigating circumstance; *see Atwood*, 171 Ariz. at 651, 832 P.2d at 668, and neither is good conduct during pretrial and presentence incarceration, *Stokley*, 182 Ariz. at 524, 898 P.2d at 473. The trial judge stated that defendant was respectful and cooperative in court, and defendant testified that he had no disciplinary write-ups while in jail. This evidence by no means proves that defendant was a model prisoner. *Cf. State v. Watson*, 129 Ariz. 60, 63, 628 P.2d 943, 946 (1981). Therefore, we agree with the trial court that defendant's conduct in court and in jail is entitled to minimal mitigating weight.

 Defendant's psychologist testified that he was not chronically violent and would not be violent in prison. Nonetheless, she said that his condition could be retriggered at any time, causing irrational or impulsive behavior. We find this evidence insufficient to prove that defendant presents a minimal risk of future dangerousness. *See State v. King*, 180 Ariz. 268, 283–84, 883 P.2d 1024, 1039–40 (1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995).

### h. Cooperation with Law Enforcement Officers

 Defendant alleges that he cooperated with police because he waived extradition to Arizona and talked with the police during an interview. However, during the interview defendant denied that he had committed any crimes and repeatedly denied having any significant relationship with Jeanette, although

he later conceded that they were romantically involved. Under these circumstances, the trial court properly refused to find cooperation with law enforcement officers as a nonstatutory mitigating circumstance. *See Stokley*, 182 Ariz. at 523, 898 P.2d at 472.

### i. Other Offered Mitigating Factors

■ The adoption of new goals may militate in a defendant's favor but does not require leniency. *See Atwood*, 171 Ariz. at 655, 832 P.2d at 672. Furthermore, the trial court found no evidence that defendant had actually adopted new goals. We agree with the trial court that the adoption of new goals is not a nonstatutory mitigating circumstance here.

■ Because we conclude that the jury's verdict finding defendant guilty beyond a reasonable doubt is supported by very strong evidence, the trial court properly refused to find the nonstatutory mitigating circumstance of residual doubt. *See Atwood*, 171 Ariz. at 653, 832 P.2d at 670.

### 6. Independent Review

■ Defendant alleges that the trial court improperly weighed the aggravating factor against the mitigating evidence. In all capital cases, this court independently reviews the record to determine the appropriateness of the death sentence by balancing all relevant mitigating evidence against any aggravating factors. *State v. Stuard*, 176 Ariz. 589, 604, 863 P.2d 881, 896 (1993). We have repeatedly stated that "the death penalty [should be] reserved for those who stand out from the norm of first degree murderers either because of the act committed or because of the defendant's background." *State v. Smith*, 146 Ariz. 491, 505, 707 P.2d 289, 303 (1985).

■ The pecuniary gain resulting from this premeditated murder was not merely a motive for the murder—it was the only motive. This case is not similar to a convenience store robbery gone awry which results in a death. This premeditated murder of the prey was carefully planned and calculated for the lucre which resulted.

As part of its Special Verdict, the trial court stated:

[T]he evidence has established the defendant had a plan to take property from [the victim] under the guise they would be running off together. The defendant caused the victim to make plans and to make statements to friends and co-workers so that they would not notice her disappearance for some period of time. The defendant claimed he paid $3,000 [to the victim] for the truck yet he had no money or source of income. The victim obtained cash advances on her credit cards totaling $2,200 while she was with the defendant and she purchased for him, with her credit cards, a sleeping bag and jacket. When the defendant returned to his home in San Diego he returned with the victim's truck, her weapons, two new sleeping bags and at least $1,000 in cash.

The court finds the state has proven beyond a reasonable doubt that the murder of [the victim] was part of a scheme to obtain her vehicle and money and the murder was not unexpected or accidental. The state has proven beyond a reasonable doubt that the defendant committed the murder as consideration for the receipt of pecuniary gain.

. . . .

I believe that I have read almost every case in Arizona where the aggravating circumstance of pecuniary gain was found to exist. I have considered the nature of the crime and the nature of the defendant. . . .

Although this murder is not an especially depraved one, the circumstances of the crime make it stand out above the norm of first degree murders.

After considering the defendant's character, his propensities, and lack of a criminal record and everything that is mitigating and potentially mitigating, and after weighing that against the existence of one aggravating circumstance, I find the mitigation is not sufficiently substantial to call for leniency.

As stated above, we agree with the trial court's findings that defendant committed this murder in expectation of pecuniary gain and that defendant's lack of a significant

prior criminal record was a mitigating factor. In addition, we believe that the trial court appropriately gave some mitigating weight, however minimal, to defendant's difficult family background and his good conduct. However, we find that defendant's military history is a mitigating factor whereas the trial court stated that it was of only some mitigating value. Nonetheless, we believe that this minor distinction does not require us to remand this case for resentencing because there is no new evidence to be received, no mitigating evidence was improperly excluded, and the mitigating evidence is not significant. *See King*, 180 Ariz. at 288, 883 P.2d at 1044.

In our reweighing, we find that even though the sole aggravator is pecuniary gain, the nonstatutory mitigating circumstances of military history and lack of a significant prior criminal record are not sufficiently substantial to call for leniency in this case. *See State v. White*, 168 Ariz. 500, 510–13, 815 P.2d 869, 879–82 (1991) (affirming death sentence where pecuniary gain was only aggravator and lack of felony record was only mitigator), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992); *State v. Hensley*, 142 Ariz. 598, 603–04, 691 P.2d 689, 694–95 (1984) (affirming death sentence where pecuniary gain was only aggravator and defendant's G.E.D. degree was only mitigator).

### DISPOSITION

The convictions in this capital case were appealed, briefed, and argued before the effective date of the repeal of A.R.S. § 13–4035. *See* 1995 Laws, Ch. 198, § 1. We have independently reviewed the record for fundamental error and have found none. Accordingly, we affirm the defendant's convictions and sentences.

FELDMAN, C.J., MOELLER, V.C.J., and ZLAKET and MARTONE, JJ., concur.