NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ALFONSO QUIROZ VILLALOBOS, *Appellant.*

No. 1 CA-CR 14-0068
FILED 1-6-2015

Appeal from the Superior Court in Maricopa County
No.  CR2012-165742-002
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist
*Counsel for Appellee*

Janelle A. McEachern, Chandler
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Samuel A. Thumma joined.

G O U L D, Judge:

¶1       Alfonso Quiroz Villalobos ("Villalobos") appeals his convictions and sentences on the grounds there is insufficient evidence to support his convictions. For the reasons discussed below, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2       On the night of December 30, 2012, Martha B. was home with her boyfriend Gabriel G. Martha's three children were also present in the home: Jose, who was fifteen years old; Yullett, who was six years old; and Saul, an infant. While Martha was watching television, she heard a loud knock on the front door. She looked outside and saw a man in a black mask pounding on the front door. In response, Gabriel ran out the back door, climbed over the fence, and fled from the scene.

¶3       Martha asked the man to identify himself. The man, later identified as co-defendant Federico Rodriguez, stated he was a police officer and told Martha to open the front door. She refused, and called 911. Martha then heard someone breaking the glass on the front door and saw an intruder forcing his way into the house. Martha gathered her children and ran out the back door.

¶4       Martha and her children tried to escape by climbing over the back fence. The family was confronted by a man later identified as co-defendant Florentino Josue Millan Erivez ("Erivez") while they were trying to climb over the fence.[1] Erivez or Rodriguez pointed his gun at

_____

[1] Martha and Jose identified this man as Erivez. At trial, however, Rodriguez testified that he confronted the family in the backyard. Erivez corroborated Rodriguez's testimony, stating that by the time he made it into the backyard, Rodriguez was marching the family back into the house.

Martha and ordered her to get off of the phone. Erivez or Rodriguez then took the phone away from Martha and disconnected the 911 call. Jose believed at this point that the individual was going to shoot him and his family. Erivez or Rodriguez then directed Martha and her children back inside the house.

¶5 Rodriguez ordered Martha and her family to sit on the couches in the living room. Rodriguez then began questioning Martha about her "husband." Rodriguez instructed Erivez to tie Martha's hands while he searched the house. After threatening to use pepper spray if she did not comply with his request, Erivez was able to tie Martha's hands behind her back.

¶6 At some point, Villalobos entered the living room carrying a shotgun. Villalobos had been in the bedrooms searching the home. Upon entering the living room, Villalobos told Rodriguez that "it was all clear, no weapons, no drugs." Villalobos then questioned Martha, asking her if she "knew what they were there for," and then advising her they were there "for the guns, the drugs, and the money."

¶7 Police officers arrived on the scene shortly after the defendants entered the home. One officer entered the back yard and observed Villalobos standing in the living room, the location where the family was being held, holding a shotgun.

¶8 Rodriguez spoke to the police, advising them he was a bail recovery agent searching for a fugitive. Rodriguez stated that he recruited Erivez and Villalobos to assist him in searching for the fugitive in the victims' home. The officers became suspicious, however, when Rodriguez was only able to provide a vague physical description of the fugitive. Rodriguez did not know the full name or date of birth of the fugitive, nor did he have a photo or any paperwork regarding the fugitive. As the officers continued to question Rodriguez, he kept changing the fugitive's name and physical description. Eventually, the officers arrested Villalobos, Rodriguez and Erivez.

¶9 All three co-defendants were jointly indicted and tried together. The jury convicted Villalobos on four counts of unlawful imprisonment, lesser-included offenses of counts two through five. Villalobos was also convicted of three counts of disorderly conduct (as to Martha, Jose, and Yullett), lesser-included offenses of counts six through eight. Villalobos timely appealed.

3

## DISCUSSION

### Standard of Review

**¶10**         "We review the sufficiency of the evidence presented at trial only to determine if substantial evidence exists to support" the verdict. *State v. Stroud*, 209 Ariz. 410, 411, ¶ 6, 103 P.3d 912, 913 (2005). "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996). Substantial evidence required for a conviction may be either circumstantial or direct. *State v. Pena*, 209 Ariz. 503, 505, ¶ 7, 104 P.3d 873, 875 (App. 2005). We view the evidence "in the light most favorable to sustaining the jury verdict, and resolve all inferences against" the defendant. *Stroud*, 209 Ariz. at 412, ¶ 6, 103 P.3d at 914.

### Mistake of Law or Fact

**¶11**         Villalobos asserts that he mistakenly believed the fugitive had signed a written waiver permitting Villalobos and his co-defendants to lawfully enter the subject home and arrest him. Based on Arizona Revised Statute ("A.R.S.") section 13-204(A)(1) (2014),[2] Villalobos claims this mistake of fact negated the requisite mental state for each of his convictions.

**¶12**         Under Arizona law, a mistake of law does not relieve a defendant of criminal responsibility. A.R.S. § 13-204(B). However, a mistaken belief of fact may negate the "culpable mental state required for commission of an offense." A.R.S. § 13-204(A)(1).

**¶13**         In substance, Villalobos' mistaken belief defense is based on a mistake of law. Villalobos believed entry into the victims' home was lawful based on the purported consent of the fugitive. Villalobos' belief was incorrect. Arizona law prohibits a bail recovery agent from entering "an occupied residential structure without the consent of the *occupants* who are present at the time of entry." A.R.S. § 13-3885(B)(1) (emphasis added). In addition, a bail recovery agent is only authorized to arrest the fugitive; there is no authority allowing a bail recovery agent to detain all of the occupants of a home while apprehending a fugitive. A.R.S. § 13–

---

[2] We cite to the current version of the applicable statues in this decision, unless revisions material to this decision have since occurred.

3885(A).  More importantly, Villalobos' mistake of law defense is not, pursuant to A.R.S. § 13-204(B), a cognizable defense.

¶14        Additionally, Villalobos' claimed mistake of fact does not negate his mental state as to Martha and the children.  Even if Villalobos thought he could lawfully enter the home and arrest the fugitive, this mistaken belief provided no legal defense for unlawfully restraining the victims and threatening them with a gun.

## Unlawful Imprisonment

¶15        Villalobos also asserts there was insufficient evidence to convict him of unlawful imprisonment.  A defendant commits the crime of unlawful imprisonment by "knowingly restraining another person." A.R.S. § 13-1303(A).  The element of "restraint" is defined as restricting "a person's movements without consent, without legal authority, and in a manner which interferes substantially with such person's liberty, by either moving such person from one place to another or by confining such person." A.R.S. § 13–1301(2).  A person is restrained "without consent" if it is accomplished by physical force or intimidation.  A.R.S. § 13-1301(2)(a).

¶16        There is substantial evidence supporting Villalobos' convictions for unlawful imprisonment.  Martha and Jose testified that Villalobos interrogated and stood guard over the family with a shotgun. An officer corroborated their testimony, testifying that when he arrived at the scene he saw Villalobos standing in the living room holding a shotgun.

¶17        Villalobos was also criminally accountable for the actions of Rodriguez and Erivez as an accomplice.  *See* A.R.S. § 13-303(A)(3) (stating that an "accomplice" is accountable for the criminal acts of another).  An accomplice is defined as one who, "with the intent to promote or facilitate the commission of an offense," solicits, commands, aids, or "provides means or opportunity to another person to commit" a crime.  A.R.S. § 13–301.

¶18        Here, all three defendants jointly participated in the home invasion.  Villalobos searched the home while Erivez or Rodriguez captured the victims in the backyard at gunpoint, marched them into the living room, and bound Martha's wrists.  Villalobos' armed presence assisted Rodriguez and Erivez, restraining the movements of the victims with a shotgun while his co-defendants were searching the house. Villalobos also aided his co-defendants by interrogating Martha about the location of "the guns, the drugs, and the money."

**¶19** Based on this record, there is substantial evidence supporting Villalobos' convictions for unlawful imprisonment.

## Disorderly Conduct

**¶20** Villalobos contends there was insufficient evidence supporting his convictions for disorderly conduct. As applicable here, the crime of disorderly conduct required the State to prove Villalobos, "with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, . . . [r]ecklessly handle[d], display[ed] or discharge[d] a deadly weapon or dangerous instrument." A.R.S. § 13-2904(A)(6). To prove recklessness for the purposes of § 13–2904, the State was required to show Villalobos: (1) was "aware of a substantial and unjustified risk" that handling, displaying, or discharging a deadly weapon would disturb the peace and quiet of the victims, and (2) "that such a risk constitute[d] a gross deviation from the standard of care that a reasonable person would observe in the situation." *In re Robert A.*, 199 Ariz. 485, 488, ¶ 14, 19 P.3d 626, 629 (App. 2001); A.R.S. § 13-105(10)(c).

**¶21** There is substantial evidence supporting Villalobos' convictions for disorderly conduct. Villalobos stood next to the victims in the living room, restraining their movements, while holding a shotgun. Villalobos was also holding the shotgun while he interrogated the victims. Based on this evidence, the jury could have reasonably concluded that Villalobos disturbed the peace and quiet of the victims by recklessly displaying/handling the shotgun.

## CONCLUSION

**¶22** For the foregoing reasons, we affirm Villalobos' convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama